**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Franklin D. GIPSON, Defendant-Appellant.**

No. 78–5507
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 10, 1979.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Lawrence A. Anderson, Huntsville, Ala. (Court-appointed), for defendant-appellant.

J. R. Brooks, U. S. Atty., Michael V. Rasmussen, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before GOLDBERG, RONEY and TJO-FLAT, Circuit Judges.

PER CURIAM:

Franklin Delano Gipson, the appellant, was convicted in a two-count indictment of violating 18 U.S.C. §§ 659 and 2 (1976).[1] Gipson's defense was an alibi. In this appeal, he claims the prosecutor committed reversible error (1) in questioning him, on cross-examination, about some missing alibi witnesses and (2) in commenting, in closing argument to the jury, on Gipson's failure to call those witnesses before the jury.

Gipson was originally indicted along with Phillip Noojin and Hugh Pepper in federal court in South Carolina for possession of furniture stolen from interstate commerce. A superseding indictment, the one involved in this appeal, was returned in the Northern District of Alabama where Gipson was tried. Noojin and Pepper testified as Government witnesses against Gipson.

On March 6, 1976, a tractor-trailer loaded with new furniture bound for Texas was stolen from the Blue Ridge Transfer Company in Sumpter, South Carolina. The trailer and its contends were sold by the thieves to Pepper and Noojin. Pepper and Noojin drove the trailer to Huntsville, Alabama, where they met appellant Gipson on March 7. Gipson was to find a buyer for the furniture but was unsuccessful. At that point the three decided to rent some trucks to unload the furniture. On March 8, Pepper and Gipson went to Graham's Shell station in Huntsville and inquired about renting trucks. They inspected one truck and left. The next day Gipson, Noojin, and Pepper went to Bryant's Union 76 station in Huntsville where Gipson rented one U-Haul truck. The three then returned to Graham's where Pepper rented a second truck. They subsequently unloaded most of the furniture from the stolen trailer onto the trucks; some of the furniture was taken to Gipson's house. Thereafter, the trailer was abandoned. It was found the next day by the police. Noojin departed in the

---

1. Count one of the indictment charged Gipson under the following portion of 18 U.S.C. § 659 (1976):

    Whoever buys or *receives* or *has in his possession* any [goods which have been stolen while moving as or which are a part of or which constitute an interstate shipment of freight or express] [shall be fined and/or imprisoned].

    (Emphasis added.) Count two of the indictment charged Gipson under another portion of section 659 as well as under the general aider and abettor statute, 18 U.S.C. § 2 (1976). The relevant portion of section 659 provides:

    The *carrying* or *transporting* of any [goods which have been stolen while moving as or which are a part of or which constitute an interstate shipment of freight or express] in interstate . . . commerce, knowing the same to have been stolen, shall constitute a separate offense and subject the offender [to fine and/or imprisonment].

    (Emphasis added.) Section 2, of course, makes an aider or abettor liable as a principle.

U-Haul truck, still loaded, for Indiana. The truck broke down on March 10 and was abandoned. Noojin was arrested on March 13 when he attempted to claim it.

Gipson was arrested and interviewed by the FBI on March 11. He had Pepper's phone number in his wallet. Gipson was subsequently identified by Mrs. Bryant, the lady who had rented him the U-Haul truck, and by Mr. Graham, the Shell service station operator.

Gipson's alibi, supported by his wife and two children, was that they were in Trenton, Georgia, and Stevenson, Alabama, on March 9 and 10 attending a funeral. On cross-examination, Gipson said that other family members and some friends were also present at the funeral; but he chose to call none of them as witnesses. The defense made no objection to this line of inquiry by the prosecutor.

In closing argument to the jury the prosecutor, without objection, commented that the only witnesses to Gipson's alibi were members of his immediate family. The prosecutor's words were,

> Of course we have in his denial of being there, we have a lack of evidence on his part. All those people at the funeral home, and at the funeral procession, none of them are here, except his close relatives, his wife, his son and a step-daughter. Record, vol. 2 at 263.

In *United States v. Chapman*, 435 F.2d 1245 (5th Cir. 1970), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971), we stated,

> The long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible. . . . However, mere physical presence at the trial or accessibility for service of a subpoena does not determine a potential witness's availability. Rather, his availability may well depend, among other things, upon his relationship to one or the other of the parties, and the nature of the testimony that he might be expected to give. . . . When a witness is controlled by one party, failure to call the witness, if his testimony would elucidate

facts in issue, creates an inference which the jury is permitted to draw against that party.

*Id.* at 1247. (Citations omitted.) Because the defense voiced no objection to the prosecutor's cross-examination or his comment in closing argument, Gipson must demonstrate plain error, Fed.R.Cr.P. 52(b), to obtain a reversal of his conviction.

> In *United States v. Brown*, 548 F.2d 1194, 1207 (5th Cir. 1977), we noted that "plain errors 'are those involving serious deficiencies which affect the fairness, integrity, or public reputation of the judicial proceedings or which constitute obvious error'." (footnote and citations omitted). To constitute plain error the error must be both obvious and substantial. Fed.R. Cr.P. 52(b); *Sykes v. United States*, 373 F.2d 607, 612 (5th Cir. 1966). Whether we will recognize an error as plain error must depend upon the facts of each particular case. *Brown, supra*, at 1208; *United States v. Morales*, 477 F.2d 1309, 1315 (5th Cir. 1973). A strict standard is applied in cases where there is a failure to object in order to " 'promote efficient judicial administration and to prevent parties from gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial.' " (Footnote and citation omitted.) *Brown, supra* at 1207.

*United States v. Greene*, 578 F.2d 648, 654 (5th Cir. 1978).

Plain error meriting reversal may be found only if the substantial rights of the defendant were affected by the statement. *Id.* Viewing the prosecutor's line of inquiry on cross-examination and his comment in closing argument with the evidence in its totality, we are satisfied that the substantial rights of Gipson were not affected. The evidence of guilt was overwhelming. Gipson's part in the scheme was outlined by his two confederates, Noojin and Pepper. Gipson was positively identified by the people who rented the trucks to the trio. Finally, his signature was on one of the rental contracts. Under the circumstances, we can find no error.

AFFIRMED.