**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony VIERA, Defendant–Appellant.**

**No. 86–2161.**

United States Court of Appeals, Fifth Circuit.

March 16, 1988.

Paul Nugent, Mike DeGeurin, Houston, Tex., for defendant-appellant.

James C. Sabalos, Vinson & Elkins, Houston, Tex., Joseph C. Wyderko, Asst. U.S. Atty., Washington, D.C., Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WISDOM, GEE, RUBIN, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:

Anthony Viera and Ernest King were charged with conspiracy to possess with intent to distribute cocaine and with actual distribution of cocaine. King took a plea agreement and testified against Viera at his trial. Viera appeals his conviction, complaining of restriction upon his impeachment of King, allowing proof of prior cocaine deals by King acting with Viera, the intimidation of a prospective witness, and the prosecutor's argument commenting upon the failure of that witness to testify. We affirm.

A confidential informer and a DEA undercover agent contacted King for the purpose of purchasing cocaine. King telephoned his supplier, and shortly thereafter Viera arrived at King's residence in a pickup truck driven by Viera's father. King and Viera then drove in King's vehicle to a parking lot where King walked to the undercover agent's car with cocaine to be sold. King testified that Viera was his supplier of the cocaine. Appearances pointed to Viera's guilt and King's testimony, decided by the jury to be credible, resolved all doubts.

### A.

A panel of this court rejected Viera's contentions relative to King's testimony. We agree and reinstate parts II and III of the panel's opinion, 819 F.2d 498, 500–02.

### B.

The next contention is that the prosecutor violated Viera's Sixth and Fifth Amendment rights by intimidating his prospective witness, his father, and by interfering with the freedom to present testimony without fear of retaliation against the witness by the government. *See Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas*, 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed. 2d 1019, 1021–23 (1967). The record here reveals that, before resting his case, defense counsel told the court that he had planned to call Viera's father as a witness but would not do so because the prosecutor had publicly stated that if the father testi-

fied the prosecutor would have him indicted. The prosecutor responded by telling the court that the defense counsel had misstated the facts, that he had simply informed counsel that he had been recently told of the father's own possible complicity in drug dealing and that this might pose problems for the client and the witness if the father were to testify. The court directed defense counsel to proceed, stating that the prosecutor's information would not restrict the freedom to call the father as a witness. The defense then rested without further contention. No claim was made that the father was influenced by this expression of the prosecutor or that the father did not wish to testify. No request was made to the court to inquire further into the matter or to hold a hearing or to consider any harm or prejudice to the defendant. We find here neither error by the court nor showing of prejudice to the defendant.

The panel read a statement by the prosecutor attached to his brief in this court as an admission of conduct that constituted reversible prejudice to the defendant. The prosecutor stated:

> I felt that the Government's attorney had an ethical duty to advise defense counsel that it was possible that if the father was called as a witness and provided incriminating evidence against himself, or perjury [sic], that I would take the matter to the next setting [sic] Grand Jury, the following week, and present the matter to them for their consideration and that he could be indicted. This information was not intended as a "threat" but communicated in good faith with honorable motives.

■ We fail to see the vice in this statement. A prosecutor is always entitled to attempt to avert perjury and to punish criminal conduct. *See United States v. Binker*, 795 F.2d 1218, 1229 (5th Cir.1986); *United States v. Whittington*, 783 F.2d 1210, 1219 (5th Cir.1986). By adding that he would move promptly to present any violation to the Grand Jury, the prosecutor cannot be charged with harassment, particularly when the statement was made to

defense counsel rather than to a prospective lay witness. No showing has been made that a prospective witness was intimidated or that he refused to testify. *See United States v. Blackwell*, 694 F.2d 1325, 1343 (D.C.Cir.1982). Nor is there any suggestion in anything that is before us that the father's testimony would have contained any material exculpatory evidence to aid Viera's defense. *See United States v. Weddell*, 800 F.2d 1404, 1410–12 (5th Cir. 1986). We are, of course, in no position to know what evidence might be developed by Viera in a collateral attack upon the conviction.

### C.

Finally, Viera complains about the following portion of the prosecutor's closing argument:

> At the beginning of this trial, do you remember who stood up in this courtroom? The father, Mr. Viera—
>
> [Objection] [Overruled]
>
> Do you remember when the Court asked all of us to come in here and I told the Judge I don't have all of my witnesses. All of mine that were in the courtroom were sworn in because we have a duty to inform the Court of it. Do you know who stood right here next to his son and raised his right hand, papa, Mr. Viera.
>
> The Judge is going to tell you that a defendant hasn't any burden to come forward in the case. That is the law. The Government has the total burden. Dad was just out there having a drink. We never heard from dad, did we, but you did hear from Mr. King.

■ In overruling the defendant's objection the trial judge stated that he did not construe the argument as a comment on the father not testifying. The prosecutor replied that he intended no comment of that nature. It is true that his argument proceeded without further suggestion that the father's testimony would have been adverse to the defendant, but it is difficult to dismiss the statement as something other than a contention that the father's failure to testify was gain for Viera. It is not

clear, however, that the prosecutor was forbidden to make this comment. The relationship of the witness to the defendant, and the fact that the witness had been called to court and put under oath as a witness for the defense, demonstrated the control of the uncalled witness that warranted an inference the jury was permitted to draw against the defendant. *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir.1970). There was a possibility, known to the prosecutor, that the father might refuse to testify or invoke the Fifth Amendment. If so, defendant's control would have been lacking and the argument unwarranted. *See United States v. Miller*, 460 F.2d 582, 588 (10th Cir.1972). This possibility was only a matter of speculation, however, and in any event the prosecutor's statement, standing alone, cannot be considered as having had any prejudicial effect against the defendant.

The conviction is AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, concurring:

I join in Parts B and C of the opinion because the record before us simply does not demonstrate that Viera was denied due process. With regard to the alleged intimidation of Viera's father, the record contains nothing but what the opinion recites. Affidavits filed in this court state additional facts, but I would not in deciding this direct appeal consider either the prosecutor's post-argument statement or the appellant's equally belated factual representations. As the opinion states, "We are, of course, in no position to know what evidence might be developed by Viera [or, I add, by the Assistant U.S. Attorney] in a collateral attack upon the conviction." What happened outside the courtroom; whether or not the representations made by counsel to the district court were factually accurate; what effect, if any, the prosecutor's actions had on the defendant's strategy; and whether the defendant was prejudiced by the course of events are all matters that may not be decided by an appellate court except upon the basis of a properly prepared record and with the benefit of a trial judge's findings of fact.

Whether the Assistant U.S. Attorney's argument to the jury was improper also depends on the answers to these questions.

For these reasons, I join in the judgment affirming the conviction.

JERRE S. WILLIAMS, Circuit Judge, with whom WISDOM, POLITZ and JOHNSON, Circuit Judges, join dissenting:

To make clear the focus of this dissenting opinion, I state at the outset that I concur fully in Part A of the opinion for the Court which reinstates Parts II and III of the panel opinion. This dissent is directed at Parts B and C of the opinion for the Court.

I.

What the opinion of the Court undertakes to accomplish with respect to the serious misconduct of the prosecutor in this case is to divide and conquer. The Court divides a highly improper and prejudicial course of conduct by the prosecutor into two separate elements which it erroneously treats as wholly unrelated to each other. Then, by its subdivision, it manages to conclude that each element of the prosecutor's conduct, taken in isolation, is not improper, much less serious enough to justify the reversal of the conviction. It is not acceptable to trivialize the conduct of the prosecutor in this case by such a subdivision. Each of the two aspects of the misconduct was quite serious; together they constitute reversible error.

The facts as outlined in the opinion for the Court require some elaboration. Gaspar Viera, the father of the convicted appellee Anthony Viera, drove his son to the home of his alleged accomplice King. When he returned to pick him up at that home later, he was arrested, his pickup truck was confiscated, and then he was released. He was sworn in as a witness at the beginning of the trial. He did not testify, however, because of a statement by the prosecutor conveyed to defense counsel which constituted a threat that if the father was called as a witness the prosecutor

would present to the next grand jury the father's testimony for possible indictment either for criminal conduct or for perjury. The defense counsel made it clear to the court that this prosecutorial threat was the reason the witness was not called to testify. Then the prosecutor, knowing this, commented in his closing argument about the fact that the father had not been called as a witness even though he had been sworn. The clear implication to the jury was that the reason the father had not been called was because the son was afraid of the father's testimony.

It is the combination of the threat that caused the witness not to be called by the defendant and the use of the fact that he was not called to prejudice appellant's case which constitutes the improper course of conduct. The actions of the prosecutor without question constitute an over-stepping of the bounds of the proper role of a United States government prosecutor and necessitate the reversal for a new trial of appellant's conviction in this case.

## II.

Attention is first directed to the first of the two major elements of the improper course of conduct, the threat by the prosecutor of the consequences if appellant's father testified. Confronted with the affidavits he admitted that on two separate occasions he had communicated to each of two defense counsel separately the threat which is at issue. These counsel then told appellant's defense counsel by way of warning as to what the prosecutor had said.

There is a dispute as to the nature of the statement by the prosecutor. Each of the two defense counsel by affidavit testified that the prosecutor said that if the father testified "he would be indicted at the next grand jury." His response, by affidavit, was that he had simply done the defense a favor by warning them that if the father testified he would probably either admit of criminal conduct or commit perjury and that the prosecutor would present the facts to the next grand jury, and it would be "likely" that he would be indicted.

I am willing to accept, as the panel opinion did accept, the prosecutor's version that he did not make a flat out threat that if the father testified he would be prosecuted. But in passing it is not totally remiss at least to observe that with a prosecutor so interested in perjury he was faced with the sworn affidavits of two members of the Bar of the State of Texas that in his affidavit he says were false. The grand jury has certainly been available for him to bring to its attention what he claims are the facts in his affidavit, which, if true, prove perjury on the part of these two lawyers. Perhaps he feels there is valor in discretion.

The prosecutor undertook to put an appealing gloss upon his threat by indicating that he was actually doing the defendant and his father a favor by warning them through their attorney of the likelihood of presenting the father's testimony to the grand jury if he did testify. The district court certainly did not accept this gloss. When the prosecutor's statements were reported to the court by defense counsel in explaining why he would not call the father as a witness, the court said, among other comments, that such statements were "improper" and that he did not "ever want it to happen again." He clearly recognized the threatening aspect of the prosecutor's statement by pointing out that if the prosecutor wanted to have the prospective witness indicted and had the evidence to have him indicted then he ought to go ahead and do it whether he testified or not. Then, after the prosecutor had replied to the judge as quoted in the opinion of the Court, the court went on to tell defense counsel that the father could be called as a witness and that the court did not understand how it affected his right to testify if he "hasn't done anything". The defense counsel said that the court's statement had not "diffused" [sic] (defused?) the threat. It is proper to observe that although the court mentioned perjury early in the discussion, the court did not evaluate the alternative which the prosecutor had presented of an indictment for criminal conduct or for perjury when it said the witness had nothing to fear if he had done nothing. But the

prosecutor's own affidavit indicates that he had stated the threat to go before the grand jury in terms of indictment either for criminal conduct or for perjury.

Of greatest concern with respect to this matter of the threat considered separately is the conclusion by the opinion of the Court that the prosecutor's conduct was above reproach—that there was no improper conduct at all. This is a conclusion that is incorrect in the law, and it raises serious dangers to the right to a fair trial. It is true that the prosecutor can take a matter of criminal conduct before a grand jury and can also take a charge of perjury before a grand jury. I cannot conceive of it as not being oppressive, however, if a prosecutor announced that in every criminal case in which there was a conviction, he would immediately present to a grand jury for perjury indictment the testimony of every defense witness whose testimony could be considered to be inconsistent with the jury verdict.

A more extreme case than the case of *Viera*, because it was the judge who did the threatening, is *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). Yet under the reasoning of the opinion for the Court, the judge's threats were not improper because they simply stated to a witness that if he took the stand and lied under oath the court would see to it that the case would go to the grand jury with an indictment for perjury. In *Webb*, the Supreme Court reversed the state conviction, finding that the district court's "threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand."

In *United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir.1980), we said, "Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant." And in *United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir. 1982), the Court said, "The constitutional right of a criminal defendant to call witnesses in his defense mandates that they

be free to testify without fear of governmental retaliation."

It can only be concluded that the prosecutor's threat, even in the terms in which he claims he gave it, was improper. It is not for either a judge or a prosecutor to warn a potential defense witness through defense counsel of the perils of possible incrimination or perjury in advance of testimony. Such conduct certainly does not merit the full approval given in the opinion of this Court. The opinion countenances prosecutorial threats in advance to present a defense witness' testimony to a grand jury. How many defense witnesses will feel free to go ahead against such a prosecutorial vendetta?

The critical issue is whether this episode, taken alone, justifies reversal of the conviction. The opinion for the Court reports incorrectly that the panel so concluded. Rather, the panel concluded only that this action by the prosecutor had to be taken as part of the course of conduct in which he also then emphasized in closing argument that Gaspar Viera had not been called as a witness. Together the two prosecutorial actions constituted sufficient misconduct to justify reversal.

### III.

To consider the two related actions of the prosecutor as one course of conduct, attention is now directed to Part C of the Court's opinion. The prosecutor was fully aware at the time of his closing argument that the reason defendant's father had not testified was because of the prosecutor's statement that if he did testify it was likely that he would have cause to present the testimony to the grand jury the next week for indictment either for criminal conduct or for committing perjury. Yet in the argument which is quoted in the opinion for the Court, the prosecutor falsely made clear implication to the jury that the reason appellant's father had not been called as a witness was because appellant feared that the father's testimony would hurt his case rather than help it.[1] In doing so the prose-

---

1. "Failure to produce a favorable witness partic-      ularly within a party's power creates an infer-

cutor covertly and precisely misled the jury by implying that the only reason for the failure to call the father as a witness was a false reason.

Yet here again the opinion for the Court finds nothing wrong with the prosecutor's statement. This is remarkable indeed. It constitutes judicial authorization to United States government prosecutors knowingly to mislead juries falsely. No other federal court so far as I have been able to find ever has issued such a carte blanche. The true issue is whether the improper conduct of the prosecutor was reversible error or not. It manifestly was error.

Over 50 years ago, Justice Sutherland writing for a unanimous Supreme Court stated: "The United States Attorney is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

More precisely, the issue in this case was dealt with by us in *United States v. Smith*, 436 F.2d 787 (5th Cir.), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). In *Smith* we held that a prosecutor's reference to the failure of the defense to call certain witnesses was improper, but that a "prompt corrective instruction insured that the jury would disregard" the remark. 436 F.2d at 791.

There are many cases, too numerous to enumerate, establishing that it is not proper for a prosecutor to comment upon the failure of a defendant in a criminal case to

present a potential witness.[2] And these are cases in which the individual is simply not presented as a witness, they are not cases where the individual has already been sworn as a witness and then is not presented because of a prosecutorial threat. In all of those cases, however, it is recognized that the error is not prejudicial with "prompt corrective instruction" which insures that the jury will disregard the remark. *See also United States v. Miller*, 460 F.2d 582, 588 (10th Cir.1972).

In this case the district court did not give a *Smith*-type curative instruction. Instead, the court overruled appellant's objection to the prosecutor's remarks, and allowed the government to continue to make references to and draw inferences from Mr. Viera's absence from the stand. The opinion for the Court reports that the trial judge stated that he did not construe the argument as a comment on the father not testifying. This statement of the trial judge was not made as to the argument quoted, which manifestly was a comment on the failure of the father to testify. It had to do instead with a later statement and a later objection not quoted in the opinion of the Court. For clarity, the entire argument at issue is quoted:

At the beginning of this trial, do you remember who stood up in this courtroom? The father, Mr. Viera—

[Objection] [Overruled]

Do you remember when the Court asked all of us to come in here and I told the Judge I don't have all of my witnesses. All of mine that were in the courtroom were sworn in because we have a duty to inform the Court of it. Do you know who stood right here next to his son and raised his right hand, papa, Mr. Viera. The Judge is going to tell you that a defendant hasn't any burden to come for-

ence that his testimony would be unfavorable." *United States v. Parr*, 516 F.2d 458, 471 (5th Cir.1975).

**2.** Most of the federal cases involving prosecutorial comment upon defense failure to produce certain potential witnesses are cases where no objection was lodged to the prosecutor's argument. The challenge is made only when a post-

trial search of the record turns up the possibility that such a claim is possible. Because plain error is required in those cases, the courts nearly always conclude that plain error has not been shown. *E.g., United States v. Gipson*, 593 F.2d 7, 9 (5th Cir.1979). In the instant case, however, objection was made and overruled.

ward in the case. That is the law. The Government has the total burden. Dad was just out there having a drink. We never heard from dad, did we, but you did hear from Mr. King.

Something else, and I didn't go into it, the Judge asked me not to and I just persisted in my line of questioning, but ladies and gentlemen, don't lose your common sense. One of the great things in our society—

MR. DeGUERIN: Judge, this is outrageous. I ask for a mistrial. The Prosecutor knows things—this is improper argument if I've ever heard in my life.

THE COURT: That's all well and good, but what is your objection?

MR. DeGUERIN: My objection is he is commenting on Mr. Viera not testifying. He could call Mr. Viera, He knows—

THE COURT: I didn't construe it as a comment.

MR. SABALOS: I didn't intend it as one. I would like to proceed, if I may.

Thus, it is to be noted that while defense counsel characterized his later objection as being based upon prosecutorial comment on the father not testifying, he was particularly objecting to the prosecutor's adding an additional factor which in effect he said he knew but the judge "asked him not to" go into. The critical point is that it is impossible to read the comments of the prosecutor at the time of the first objection as not being comments on the failure of the father to testify. It therefore was required that there be a curative instruction, and none was made.

I do not conclude that this obviously improper argument by the prosecutor, uncorrected by court instruction, is itself enough to justify the reversal of the conviction. But here the prosecutor drove the father, already sworn as a witness in the presence of the jury, off the stand because of the defendant's concerns to protect the father from being exposed immediately to grand jury investigation for criminal conduct or perjury. Then he knowingly and intentionally misled the jury as to why the father had not been presented as a witness. I must conclude that the prosecutor passed all bounds of the responsibility of federal prosecutors to try cases honestly and honorably. The prosecutor himself took a situation not serious enough to be reversible error, the threat, and he himself made a serious and glaring error out of it by using the failure to testify which he himself had improperly caused to bolster this case. Failing curative instructions from the court upon objection after the jury had been misled, reversal of this unfair trial for a new trial is the only proper decision.

I point out that this is not a case evaluating state procedures or state rules concerning prosecutorial actions under a constitutional test. We are reviewing a federal criminal conviction and applying the federal law as to the activities of a prosecutor who drove a defense witness off the stand by threat of official action and then commented to the jury falsely in a way which clearly misled the jury as to why the defendant had not called the witness.[3] Yet we are told in an opinion which will be of the deepest concern to the fair administration of federal criminal procedure that the prosecutor did nothing wrong at all! In fairness to conscientious, responsible federal prosecutors as well as criminal defendants, I must dissent.

3. We do not evaluate the prosecutorial conduct in this case on the basis of constitutional requirements. We are simply a federal court reviewing a federal criminal conviction for trial error sufficient to justify reversal for a new trial. *Bartone v. United States,* 375 U.S. 52, 54, 84 S.Ct. 21, 23, 11 L.Ed.2d 11 (1963); *United States v. Martinez,* 667 F.2d 886, 891 (10th Cir. 1981).