STATE of Missouri, Plaintiff–
Respondent,

v.

John Jeffrey PETERSON,
Defendant–Appellant.

No. 17624.

Missouri Court of Appeals,
Southern District,
Division One.

May 21, 1992.

Scott B. Tinsley, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Judge.

John Jeffrey Peterson (defendant) was convicted, after a jury trial, of selling marijuana. § 195.020, RSMo 1986 (repealed). He appeals that conviction contending that his right to compulsory process to obtain witnesses was eroded due to prosecutorial misconduct, and that he was denied the opportunity to properly prepare his defense because the state was allowed to amend the information that charged him with the offense for which he was convicted during trial to change the date that the offense was alleged to have occurred. This court affirms.

Taken in the light most favorable to the verdict, the evidence at trial was that on January 28, 1988, Alysia Snead[1] was introduced to undercover police officer William Thomas. Ms. Snead arranged for Officer

---

1. Alysia Snead married between the date the offense occurred and the date of trial. Her married name is Simmons. For convenience, and to avoid confusion, she will be referred to throughout this opinion by her maiden name, Snead.

Thomas and her to meet defendant at his residence for the purpose of buying marijuana. Defendant met them at the door and allowed them to enter his apartment. One other person was present, an unidentified black male. Officer Thomas inquired about the price of a bag of marijuana. Thomas testified, "I asked him if it was $35, he said yeah, and I counted out $35. There was a twenty, a ten and a five. And I purchased the bag of marijuana...." Officer Thomas also testified that Ms. Snead purchased a second bag of marijuana from defendant for $35. The bags contained 5.43 grams and 6.07 grams of marijuana. Defendant also gave Officer Thomas a hand-rolled marijuana cigarette that contained .12 grams of marijuana.

The state proceeded to trial on a first amended information that had been filed, over defendant's objection, four days before trial commenced. The first amended information alleged, as had the original information that was filed, that the offense occurred "on or about the 1st day of January, 1988." After the trial had begun, when testimony was first given about events that occurred on January 28, 1988, defendant objected as to its relevancy. The prosecutor moved to amend the information upon which the case was being tried "by interlineation and change the date to the 28th day." The trial court deferred its ruling on the motion to amend the information and permitted the state to continue presenting evidence subject to the objection that was made.

At a later time during the trial, before the state rested, the trial court granted the state's motion to amend the first amended information, by interlineation, to reflect the date of the offense as being January 28, 1988. Defendant moved for "a 48–hour continuance" to investigate the case. That motion was denied.

Alysia Snead testified for defendant. She testified that she had been threatened by the assistant prosecuting attorney while she was in the courthouse hallway the day before. She was asked the following questions and gave the following answers:

Q. I would ask if anyone in this courtroom—what person, if any, in this courtroom made some statements to you yesterday out here on this bench?

A. The prosecuting attorney.

Q. This man right here?

A. Yes.

Q. And what were those statements that he made to you?

A. He asked me some questions out in the hallway and I answered them. And he told me that if I answered them on the stand to the effect that I had answered them out there that I would be charged with perjury and he would send me to prison.

.    .    .    .    .

A. I could go to prison if I said—if I answered the questions the way I answered them in the hall, he said I could be sent to prison for perjury.

Ms. Snead then testified that the alleged transaction which was the basis for the criminal charge against defendant never occurred; that she had never purchased drugs from him. She denied having "worked as an informant for the Springfield Police Department."

▪ Defendant's first point on appeal asserts that "[t]he trial court erred in denying defendant's motion for new trial for the reason that prior to trial the prosecutor threatened defense witness Alysia Simmons (Snead) with prosecution for perjury if she testified on behalf of defendant that the alleged sale of marihuana never occurred." Defendant contends that the actions of the assistant prosecuting attorney "substantially interfered" with the witness' testimony and, as a result, that defendant was prejudiced. He claims that his right to present his defense and to call witnesses favorable to him was harmed by the prosecutor's improper interference.

During the trial, when Ms. Snead was questioned about threats made to her by the assistant prosecuting attorney, the prosecutor acknowledged his conversation with her, saying that he told her "that she would likely be charged with perjury if she lied on the stand."

Defendant contends that his constitutional guarantee to "have compulsory process for obtaining witnesses in his favor" was violated. U.S. Const. amend. VI. He claims that "[t]he actions of the prosecutor in this case are exactly the kind of prosecutorial threats" that were condemned in *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), and *U.S. v. Viera*, 839 F.2d 1113 (5th Cir.1988).

The defendant in *Webb* was charged and convicted of burglary. After the state rested, during a recess before the defendant presented his defense, the defendant's only witness was called before the court. The witness had a criminal record and was serving a prison sentence. The trial judge in *Webb*, on his own initiative, gave a lengthy admonishment to the witness about perjury. It included:

> If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [*sic*] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on.

409 U.S. at 96, 93 S.Ct. at 352. The trial judge in *Webb* told the witness that by taking the stand and lying, it would probably "mean several years and at least more time that [he would] have to serve"; that it would be held against him when he would be up for parole. *Id.*

The defense counsel in *Webb* objected to the trial court's comments. His objection included the grounds that the admonition placed the witness under duress and deprived the defendant in that case "of his defense by coercing the only defense witness into refusing to testify." *Id.* Upon

being called to testify, the witness refused to testify for any purpose. The trial court excused him.

The conviction was affirmed by the Court of Criminal Appeals of Texas. *Webb v. State*, 480 S.W.2d 398 (Tex.Cr.App.1972). The Supreme Court of the United States granted certiorari. It held:

> In the circumstances of this case, we conclude that the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment.[2]

409 U.S. at 98, 93 S.Ct. at 353. It reversed the trial court's judgment of conviction.

In *Viera* the U.S. Fifth Circuit Court of Appeals held that a prosecutor's statement to defense counsel that if Viera's father testified in Viera's defense, it "might pose problems for the client and the witness" in view of information that the prosecutor had received regarding "the father's own possible complicity in drug dealing." 839 F.2d at 1115. The father did not testify, but "[n]o claim was made that the father was influenced by this expression of the prosecutor or that the father did not wish to testify. No request was made to the court to inquire further into the matter or to hold a hearing or to consider any harm or prejudice to the defendant." *Id.* The Fifth Circuit found no error by the trial court, nor prejudice to the defendant. It found that there was no showing that a prospective witness was intimidated or refused to testify. The court, in *Viera*, emphasized that the prosecutor's "statement was made to defense counsel rather than to a prospective lay witness" in finding that there had been no showing of intimidation of a witness. *Id.*

**2.** In *Webb* the Supreme Court found that the defendant had been denied the due process required by the Fourteenth Amendment. The Court relied on *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). *Washington* addressed the Sixth Amendment right to offer testimony of witnesses and to compel their attendance. The Court, at l.c. 98 in *Webb*, quoted from *Washington* as follows: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary,

is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

Defendant, in his brief, aptly states the issue presented by this point. "The question in this case is whether the prosecutor's conduct toward the witness substantially interfered with her free and unhampered determination to testify, and if so, as to the content of her testimony. *U.S. v. Thomas,* 488 F.2d [334] at 336 [ (6th Cir.1973) ]."

The facts in the two cases that defendant relies upon, *Webb* and *Viera,* differ significantly from the facts in this case. In *Webb* the trial judge, apparently in his courtroom while court was in session but outside the presence of the jury, gave the admonishment of possible criminal charges being brought against the witness if he testified; whereas here, the prosecutor spoke to the witness in a hallway. In *Viera* the remarks that a problem might exist if the witness testified were made by the prosecutor, but they were made to defendant's counsel. Additionally, and foremost, in *Webb* and in *Viera,* the witnesses did not testify.

In this case, Ms. Snead testified. She was asked about the effect of the prosecutor's admonition. She answered the questions asked by the defense attorney:

Q. Why are you here to testify then today after what you were told yesterday by the prosecutor?

A. Because I was not intimidated by what he said because what I said out there I will say in here today.

Q. All right. You understand what an oath is?

A. Yes.

Q. And what is an oath?

A. I swore to tell the truth.

She then answered additional questions. She testified that she did not know Officer Thomas in January 1988; that she did not take him to defendant's residence; and that she had not bought marijuana from defendant.

By her own statement, Ms. Snead was not intimidated by the remarks made to her by the assistant prosecuting attorney. Defendant, nevertheless, attempts to relate certain imprecise responses that Ms. Snead gave to questions as being the result of a "chill[ing]" effect caused by the prosecutor's remarks to her. Ms. Snead explained the situation, however. Defendant's attorney asked Ms. Snead, "When you say you don't remember something, are you saying you don't remember it because you've got a vague memory or you don't remember it because it just didn't happen?" She answered, "I don't remember it because they're wanting me to specify dates and people that—things that was happening three years ago, at a time where, you know, I wasn't the same as I am now."

■ The conduct of the assistant prosecuting attorney in this case was improper. *See Reese v. U.S.,* 467 A.2d 152 (D.C.App. 1983); *U.S. v. Thomas, supra; People v. Pena,* 383 Mich. 402, 175 N.W.2d 767 (1970). However, "[w]here prosecutorial misconduct is alleged, the erroneous action must rise to the level of 'substantial prejudice' in order to justify reversal." *Reese, supra,* at 156. "[T]he test for 'substantial prejudice' is whether the misconduct substantially swayed the judgment." *Id.*

A method for determining whether prejudice existed when the state had failed to disclose evidence that was favorable to a defendant was discussed in *State v. Wade,* 635 S.W.2d 51, 54 (Mo.App.1982):

A defendant is entitled to the sanction of a new trial when the undisclosed evidence bears decisively—and not only as corroboration—on the issue of guilt [*State v. Allen,* 530 S.W.2d 415, 418[1–3] (Mo.App.1975) ] or on the credibility of a witness [*Napue v. People of the State of Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *State v. Collett,* 526 S.W.2d 920, 931[12] (Mo.App. 1975) ]. The test for prejudice is determined by the nature of the charge, the evidence presented by the prosecution, and the role the undisclosed testimony would likely have played on the return of guilt or punishment. *State v. Dayton,* 535 S.W.2d 469, 476[13–14] (Mo.App. 1976).

The granting of sanctions for prosecutorial nondisclosure of evidence favorable to a defendant is based upon the principles enunciated in *Brady v. Maryland,* 373 U.S.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The wrongfulness of prosecutorial intimidation of a defendant's witness is based upon those same principles. It is appropriate to consider the effect of the assistant prosecuting attorney's actions in this case by examining the nature of the charge, the evidence that was presented by the prosecution, and whether the witness failed to produce any testimony or other evidence favorable to defendant that she would have provided but for the admonition she received from the assistant prosecuting attorney. Here, defendant offers no suggestion of any additional evidence that Ms. Snead could or would have provided had the prosecutor not admonished her about possible prosecution for perjury. There has been no showing that Ms. Snead failed to provide anything by way of her testimony that would have affected the jury's verdict with regard to guilt or punishment or the trial court's imposition of sentence.

The state's evidence was strong—the testimony of the undercover police officer who purchased the marijuana. The charge, sale of marijuana, is not complex. Under these circumstances, this court does not find that defendant was subjected to substantial prejudice by reason of the prosecutor's improper conduct in admonishing Ms. Snead, a prospective witness for defendant. The first point is denied.

■■■ Defendant's second point on appeal asserts that the trial court erred in granting the state's request to amend the information upon which the case was tried during the course of the trial so as to change the date the offense was alleged to have occurred from January 1, 1988, to January 28, 1988. Defendant claims the trial court further erred in denying his request for continuance after the amendment had been allowed. He contends that the change deprived him of defenses that had previously been available and resulted in him being substantially prejudiced. Defendant does not, however, identify any particular defenses that were previously available but were no longer available after the amendment was made.

Rule 23.08 states:

Any information may be amended ... at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced. No such amendment ... shall cause delay of a trial unless the court finds that a defendant needs further time to prepare his defense by reason of such amendment. . . .

The date the offense occurred was not the essence of the offense. No additional or different offense was charged by the amendment. Defendant alleges only that "an alibi might be available on one date when it was not available on another." He offers no explanation of what an additional 48 hours would have provided him by way of a defense. He has not demonstrated any prejudice. *See State v. Snyder*, 502 S.W.2d 339, 342 (Mo.1973). The trial court did not abuse its discretion in permitting the amendment of the information during the course of the trial, nor by denying defendant's request for a continuance. The second point is denied. The judgment of conviction is affirmed.

PREWITT, P.J., and CROW, J., concur.