**STATE of Missouri, Plaintiff/Respondent,**

v.

**David POLK, Defendant/Appellant.**

**No. ED 98946.**

Missouri Court of Appeals, Eastern District, Division Four.

June 12, 2013.

694

Edward Thompson, St. Louis, MO, for Appellant.

Shaun Mackelprang, Jefferson City, MO, for Respondent.

LISA S. VAN AMBURG, Presiding Judge.

## INTRODUCTION

Defendant David L. Polk was convicted by jury in the Circuit Court of the City of St. Louis of forcible rape, section 566.030, R.S.Mo. (1991), and forcible sodomy, section 566.060, R.S.Mo. (1991). The trial court sentenced Polk to concurrent sentences of imprisonment of fifteen years for forcible rape and fifteen years for forcible sodomy. On appeal, Polk argues that the trial court erred by: (1) failing to dismiss the case with prejudice or strike the jury panel due to the Circuit Attorney's inappropriate public comments about the case on Twitter; and (2) permitting the state to introduce testimony regarding the victim's identification of him in a photo lineup, because the photo lineup was unduly suggestive.

We hold: (1) Even if the Circuit Attorney's public Twitter comments were improper, Polk failed to present evidence that the jury was substantially swayed by those comments; and (2) the photo identification procedure used to identify Polk was not unduly suggestive. We affirm the trial court's judgment.

## FACTS

On January 9, 1992, Polk approached eleven-year-old K.R. as she was walking to the store. Polk pressed what K.R. thought was a gun into her back and asked her if she wanted to live. Polk then led K.R. to the basement of a vacant house where he repeatedly raped her over the course of the day. Eventually, after Polk left the basement, K.R. escaped.

Upon returning home, K.R. told her mother what had occurred. Her mother called the police and K.R. reported the details of the rape to them. K.R. was then taken to the hospital, where doctors performed a sexual assault kit. The assault kit revealed the presence of sperm, and a sample of the sperm was frozen for future analysis.

In 2011, almost twenty years later, Detective Richard Noble was notified of a match from the Combined DNA Indexing System linking Polk to the DNA recovered from K.R.'s sexual assault kit. Detective Noble reopened the investigation into

K.R.'s 1992 rape, which culminated in the state's prosecution of Polk. The jury convicted Polk of forcible rape and forcible sodomy, and this appeal follows.

## DISCUSSION

In his first point, Polk argues that the trial court erred by failing to dismiss the case with prejudice or strike the jury panel due to the Circuit Attorney's inappropriate public comments about the case on Twitter. Specifically, Polk contends that the Circuit Attorney's comments violated Missouri Supreme Court Rule of Professional Conduct 4–3.8(f) and prejudiced the jury against him.

 "Dismissal of the indictment is a matter for the discretion of the trial judge, and we will only overturn for abuse of discretion." *State v. Loewe*, 756 S.W.2d 177, 182 (Mo.App.E.D.1988). Likewise, "[t]he trial court is vested with broad discretion in determining if a jury panel should be dismissed and its ruling is not disturbed on appeal unless it clearly indicates an abuse of discretion." *State v. Mentola*, 691 S.W.2d 420, 422 (Mo.App. S.D.1985). "A trial court abuses its discretion when its ruling is 'clearly against the logic and circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *State v. Davis*, 32 S.W.3d 603, 611 (Mo.App.E.D. 2000) (quoting *State v. Brown*, 939 S.W.2d 882, 883–884 (Mo. banc 1997)).

Here, Circuit Attorney Jennifer M. Joyce repeatedly used her Twitter feed[1] to publicly comment on Polk's case during the critical time frame of trial. Days be-

fore jury selection began, Joyce tweeted, "David Polk trial next week. DNA hit linked him to 1992 rape of 11 yr old girl. 20 yrs later, victim now same age as prosecutor." During trial, Joyce tweeted, "Watching closing arguments in David Polk 'cold case' trial. He's charged with raping 11 yr old girl 20 years ago," and "I have respect for attys who defend child rapists. Our system of justice demands it, but I couldn't do it. No way, no how." Once the case was submitted to the jury, Joyce continued, "Jury now has David Polk case. I hope the victim gets justice, even though 20 years late." Lastly, after the verdict, Joyce posted, "Finally, justice. David Polk guilty of the 1992 rape of 11 yr old girl. DNA cold case. Brave victim now the same age as prosecutor," and "Aside from DNA, David Polk's victim could identify him 20 years later. Couldn't forget the face of the man who terrorized her."

Polk contends that Joyce's comments violate the rules of professional conduct for prosecutors. Rule 4–3.8(f) provides:

> except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, [prosecutors should] refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused.

We recognize that the basic facts underlying Joyce's comments are contained in the felony complaint and probable cause statement and, as such, are part of the public record. However, extraneous statements on Twitter or other forms of social media,

---

1. Twitter is a vast social media network with over 230 million monthly active users. *About Twitter, Inc.*, Twitter, (Nov. 26, 2013), https:// about.twitter.com/company. It allows users to read and send "tweets," (140 character text messages), which post to users' public profiles in real time. *Learn the Basics*, Twitter, (Nov. 26, 2013), *https://discover.twitter.com/learn-more*. Users subscribe to or "follow" other users' streams of tweets to stay updated on their latest postings. *Id.*

particularly during the time frame of the trial, can taint the jury and result in reversal of the verdict. We doubt that using social media to highlight the evidence against the accused and publicly dramatize the plight of the victim serves any legitimate law enforcement purpose or is necessary to inform the public of the nature and extent of the prosecutor's actions. Likewise, we are concerned that broadcasting that the accused is a "child rapist" is likely to arouse heightened public condemnation. We are especially troubled by the timing of Joyce's Twitter posts, because broadcasting such statements immediately before and during trial greatly magnifies the risk that a jury will be tainted by undue extrajudicial influences.

■ Nevertheless, even if the prosecutor's public Twitter comments were improper, "the test is the fairness of the trial, not the culpability of the prosecutor." *State v. Forrest*, 183 S.W.3d 218, 227 (Mo. banc 2006). "Where prosecutorial misconduct is alleged, the erroneous action must rise to the level of 'substantial prejudice' in order to justify reversal." *Id.* (quoting *State v. Peterson*, 833 S.W.2d 395, 398 (Mo.App. S.D.1992)). "The test for 'substantial prejudice' is whether the misconduct substantially swayed the judgment." *Id.* (quoting *Peterson*, 833 S.W.2d at 398).

■ Here, Polk has presented no evidence that the jury was aware of or influenced by Joyce's Twitter comments. During voir dire, none of the potential jurors responded that he or she followed the prosecutor's social media postings. Additionally, the trial court instructed the jury not to conduct any independent research, and to refrain from using social media such as Twitter or Facebook. Though we do foresee how comments like Joyce's *could* taint a jury, we cannot conclude that the jury in this case was substantially swayed based on the mere potential for prejudice.

Accordingly, even if the prosecutor's public Twitter comments were improper, the trial court did not abuse its discretion in denying Polk's motions to dismiss and to strike the jury panel.

In his second point, Polk argues that the trial court erred by permitting the state to introduce testimony regarding K.R.'s identification of him in a photo lineup, because the photo lineup was unduly suggestive. Specifically, Polk contends that K.R. was told that DNA evidence linked a man named David Polk to the alleged offenses prior to the identification, and was shown only one page of photographs.

■ "A trial court has broad discretion to admit or exclude evidence at trial." *Id.* at 223 (quoting *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005)). We reverse only if the trial "court has clearly abused its discretion." *Id.* (quoting *Madorie*, 156 S.W.3d at 355).

■ "Identification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive and the suggestive procedure made the identification unreliable." *State v. Body*, 366 S.W.3d 625, 629 (Mo.App.E.D.2012) (quoting *State v. Middleton*, 995 S.W.2d 443, 453 (Mo. banc 1999)). "We will not examine whether the identification was sufficiently reliable unless the defendant has first borne the burden of demonstrating that the police procedures were impermissibly suggestive." *Id.* "Police procedure is unduly suggestive if the witness's identification of the defendant results from the procedure or actions of the police, rather than from the witness's recollections of his or her firsthand observations." *Id.* "Identification evidence should not be excluded as unduly suggestive unless the procedure was so suggestive that it gave rise to a 'very substantial likelihood of irreparable misidentification.'" *Id.* (quot-

ing *State v. Floyd,* 347 S.W.3d 115, 125 (Mo.App.E.D.2011)).

 Here, Polk has not demonstrated that the procedure used to identify him was unduly suggestive. Contrary to Polk's contention, the evidence shows that Detective Noble did not inform K.R. of the DNA match before K.R. identified Polk in the photo lineup. Though K.R. did testify at one point that Detective Noble told her of the DNA match before she was shown the photo lineup, she also testified that Noble only asked her whether she recognized Polk's name, and Noble repeatedly testified that he did not mention the DNA match before showing K.R. the photo lineup. This Court "review[s] the evidence presented at trial in the light most favorable to the verdict." *State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999). Thus, we cannot conclude that Noble informed K.R. of the DNA match before she identified Polk.

Rather, the evidence shows that Noble showed K.R. a photo lineup depicting six people who had been chosen by a computer program because of their similar appearance to Polk. Noble informed K.R. that her attacker may or may not be pictured and that she was under no obligation to identify anyone. Though Noble asked K.R. in an earlier phone conversation if she recognized Polk's name, the photo lineup did not show the names of the individuals pictured. K.R. testified at trial that she did not research Polk's name before making the identification, and Noble testified that a Google search of Polk's name yielded no information about him on the first three pages. In *State v. Body,* this Court recently held that a similar photo identification procedure was not unduly suggestive, because the photo lineup depicted individuals that looked similar to the suspect, and the detective informed the victim that the suspect may or may not be pictured. *Id.* at 631. Likewise, in *State v. Hunter,* 43 S.W.3d 336, 341 (Mo.App.W.D. 2001), the court held that a six person photo lineup like the one at issue here was not unduly suggestive. Polk has presented no evidence to suggest that K.R. misidentified him because Detective Noble mentioned his name to her. Accordingly, we cannot conclude that police procedure used to identify Polk "was so suggestive that it gave rise to a 'very substantial likelihood of irreparable misidentification,'" *Body,* 366 S.W.3d at 629 (quoting *Floyd,* 347 S.W.3d at 125), based upon K.R.'s knowledge of Polk's name alone. The trial court did not abuse its discretion by permitting the state to introduce testimony regarding K.R.'s identification of Polk.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

PATRICIA L. COHEN. J., and GARY M. GAERTNER, JR., J. concur.