STATE of Missouri, Respondent,

v.

**Earl M. FORREST, Appellant.**

No. SC 86518.

Supreme Court of Missouri,
En Banc.

Jan. 10, 2006.

Rehearing Denied Feb. 28, 2006.

Janet M. Thompson, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. Ahsens, Asst. Atty. Gen., Jefferson City, for Respondent.

RONNIE L. WHITE, Judge.

## I.

A jury convicted Appellant, Earl M. Forrest, of three counts of first-degree murder and recommended three death sentences. Judgment was entered consistent with the jury's recommendation. Appellant seeks reversal raising thirteen points of error. This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 3. Affirmed.

## II.

The facts, which this Court reviews in the light most favorable to the verdict,[1] are: On December 9, 2002, Appellant, who had been drinking, and his girlfriend, Angelia Gamblin, drove to Harriett Smith's home. Appellant and Smith apparently had a falling out over a dishonored agreement with Smith to purchase a lawn mower and a mobile home for Appellant in exchange for Appellant introducing Smith to a source for methamphetamine. Appellant demanded that Smith fulfill her part of the bargain. During the ensuing melee, Appellant shot Michael Wells, a visitor at the Smith residence, in the face killing him. He also killed Smith, shooting her a total of six times.

Appellant removed a lockbox from Smith's home containing approximately $25,000 worth of methamphetamine and returned to his home with Gamblin, where a shootout with the police ensued. Appellant shot Sheriff Bob Wofford in the abdomen wounding him. He killed Deputy Sharon Joann Barnes, shooting her once in her chest and a second time in the back of her head. Appellant sustained a bullet wound to his face. Gamblin was shot twice, once in her shoulder and once in her back.

Appellant finally surrendered and was charged with three counts of first-degree murder for the deaths of Smith, Wells and Barnes. The jury found Appellant guilty on all three counts. During the penalty phase, the jury found the presence of multiple statutory aggravators to support its unanimous recommendation for a death sentence for each of the three murders. With regard to the murder of Harriett Smith, the jury found that: (1) her murder was committed while Appellant was engaged in the commission of another unlawful homicide, that of Michael Wells; and (2) Appellant murdered Smith for the purpose of receiving something of monetary value. The statutory aggravator found in relation to Michael Wells's murder was that he too was murdered for pecuniary gain. The murder of Joann Barnes carried the statutory aggravator of being committed against a peace officer while engaged in the performance of her official duty.

## III.

Appellant raises three points claiming evidentiary errors; points I, II, and XIII. Appellant contends that the trial court erred when admitting the testimony of two police officers that Appellant believed was hearsay and improper bolstering of other testimony during the guilt phase trial. He also alleges error with the trial court's admission of prior unadjudicated criminal conduct and victim impact testimony during the penalty phase trial.

 "A trial court has broad discretion to admit or exclude evidence at trial."[2] "This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion."[3] "[T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration."[4] Additionally, on direct appeal, this Court reviews the trial court "for prejudice, not mere error, and will reverse only if the error was so

1. *State v. Taylor,* 134 S.W.3d 21, 24 (Mo. banc 2004).

2. *State v. Madorie,* 156 S.W.3d 351, 355 (Mo. banc 2005).

3. *Id.*

4. *State v. Gonzales,* 153 S.W.3d 311, 312 (Mo. banc 2005).

prejudicial that it deprived the defendant of a fair trial."[5] Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.[6]

The disputed testimony of the two officers involved their rendition of the shootout that occurred at Appellant's residence. A review of the transcripts reveals that the officers' testimony was repetitious when they were asked to describe some of the events that transpired when additional officers arrived on the scene and when Ms. Gamblin was shot. The statements involved whether other officers had stated if they heard gun shots coming from the house and whether Gamblin had stated that the Appellant was the first to shoot when the police arrived. Appellant objected to these statements at trial solely on the basis of being hearsay. Consequently, the Court applies abuse of discretion review to the hearsay argument but reviews the bolstering claim for plain error.

"A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value."[7] The testimony in question was clearly hearsay. However, the admission of the testimony, while being error, was not so prejudicial as to require reversal. To the "extent a declarant is available for live testimony, under oath, the dangers of hearsay are largely non-existent."[8] The declarants in this instance did provide direct testimony and were subject to cross-examination. Moreover, Appellant offers nothing other than speculation in his attempt to claim prejudice, and there is no evidence to support the contention that the statements affected the outcome of trial.

"Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony."[9] "However, if the out-of-court statement is offered for relevant purposes other than corroboration and duplication ... there is no improper bolstering."[10] Even assuming, arguendo, that the statements in question constituted improper bolstering, and that they did not have independent value or were merely cumulative, Appellant fails to demonstrate how the admission of these two statements would have prejudiced his case. Not only would simple prejudice be required under plain error review for this claim, but that prejudice must rise to the level of manifest injustice or a miscarriage of justice to rise to the level of reversible error.[11] Because the evidence of Appellant's guilt was overwhelming, no manifest injustice or miscarriage of justice has been shown that would entitle Appellant to relief under the plain error rule.[12]

Appellant also claims error with the trial court's admission of evidence concerning his alleged drug possession and distribution of illegal drugs in California—alleged crimes that were never adjudicated.

5. *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999).

6. *State v. Barriner*, 111 S.W.3d 396, 400–01 (Mo. banc 2003).

7. *Smulls v. State*, 71 S.W.3d 138, 148 (Mo. banc 2002).

8. *State v. Link*, 25 S.W.3d 136, 145 (Mo. banc 2000).

9. *State v. Wolfe*, 13 S.W.3d 248, 257 (Mo. banc 2000).

10. *Id.*

11. Rule 30.20; *State v. Cole*, 71 S.W.3d 163, 170 (Mo. banc 2002).

12. *State v. Jaco*, 156 S.W.3d 775, 781 (Mo. banc 2005); *State v. Jordan*, 627 S.W.2d 290, 292–93 (Mo. banc 1982).

"[T]his Court has repeatedly held that both the state and the defendant may introduce any evidence pertaining to the defendant's character in order to help the jury assess punishment in a penalty phase setting, even where that evidence constitutes unadjudicated bad acts."[13] Appellant's claim of error is devoid of merit.

 In his third claim of evidentiary error, Appellant claims multiple errors in association with the admission of the victim impact testimony from Joann Barnes's family members. Appellant contends that the court admitted hearsay; evidence ascribing blame to Appellant for the unrelated deteriorating health of two brothers; inappropriate evidence of the family's desire that Appellant receive the death penalty; and finally that the jury lacked instruction or guidance in how to consider and weigh this evidence or what standard of proof to apply to this evidence.

 Victim impact evidence is admissible under the United States and Missouri Constitutions.[14] "[J]ust as the defendant is entitled to present evidence in mitigation designed to show that the defendant is a uniquely individual human being, the State is also allowed to present evidence showing each victim's uniqueness as an individual human being."[15] Victim impact evidence violates the constitution only if it "is so unduly prejudicial that it renders the trial fundamentally unfair."[16]

The alleged hearsay statements concerned the observations of one witness as to how Barnes's nieces and nephews reacted to her death. The transcripts reveal that the witness stated that the nieces and nephews talked about their Aunt Joann's death and that they couldn't believe what happened. There is no testimony as to what exactly what the nieces and nephews stated. This testimony was not offered for the truth of the matter asserted and does not constitute improper hearsay.

 With regard to the testimony mentioning Barnes's brothers, one brother died subsequent to Ms. Barnes's murder and one experienced multiple strokes, there was no testimony directly linking, or even suggesting, that their deteriorating health was in any way related to Ms. Barnes's murder. "It is not necessary that every piece of victim impact evidence relate to the direct impact of the victim's death on the witness."[17] The witness in question was testifying as to the many hardships the family endured following Barnes's murder. There is no evidence that supports the proposition that the jury was incapable of understanding the court's instructions during the penalty phase when it returned a recommendation for the death sentence.[18] The jury found, beyond a reasonable doubt, the statutory aggravators necessary to support its recommendation. There is absolutely no evidence that these statements prejudiced the jury and no evidence that the admission of this evidence renders Appellant's trial fundamentally unfair.

The statement calling for the imposition of the death penalty was made to the

---

13. *State v. Winfield,* 5 S.W.3d 505, 515 (Mo. banc 1999).

14. *State v. Roberts,* 948 S.W.2d 577, 594 (Mo. banc 1997).

15. *State v. Deck,* 994 S.W.2d 527, 528 (Mo. banc 1999); *Payne v. Tennessee,* 501 U.S. 808, 822–25, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

16. *State v. Gill,* 167 S.W.3d 184, 195 (Mo. banc 2005).

17. *Id.* at 195–197.

18. *Middleton v. State,* 103 S.W.3d 726, 743 (Mo. banc 2003).

judge, after the penalty phase, during the sentencing hearing. There is no possible way that this statement could have influenced the jury's recommendation. Even if the statement was improper, "judges are presumed not to consider improper evidence during sentencing," and Appellant has provided no evidence to surmount that presumption.[19]

Appellant's last contention that the jury was not properly instructed on how to consider victim impact testimony or what standard of proof to apply to that evidence is also lacking in merit. Similar claims have been repeatedly rejected by this Court, and having ruled on these issues previously, and having examined this claim thoroughly and finding no error of law, an extended opinion on these issues would have no precedential value.[20]

### IV.

In Appellant's points III and IX he raises several claims of trial court error in association with the guilt and penalty phase closing arguments. First, he asserts that sustaining the State's objection to his penalty phase argument that Appellant's family and friends would be "very, very, very distraught" if the jury recommended a death sentence deprived the jury of relevant evidence that would have rebutted or mitigated the victim impact evidence put on by the State. Appellant also claims that multiple statements made by the prosecution during the guilt and penalty phase closing arguments constituted prosecutorial misconduct and prejudiced his case.

"A trial court maintains broad discretion in the control of closing arguments."[21] "The rule is that unsworn remarks of counsel in opening statements, during the course of trials or in arguments are not evidence of the facts asserted."[22] "Although courts are to be careful to refrain from unduly restricting closing arguments, they have the power to confine the arguments to issues raised by the pleadings and the evidence."[23] "A party may argue inferences justified by the evidence, but not inferences unsupported by the facts."[24] "Review of the trial court's rulings during closing argument is for abuse of discretion."[25] "An argument does not require reversal unless it amounts to prejudicial error."[26]

"Defense counsel should have wide latitude in drawing inferences from the record."[27] "If the court prevents defense counsel from making a point essential to the defense, the court has abused its discretion," and "[t]he court should exclude only those statements that misrepresent the evidence or the law, introduce irrele-

---

19. *State v. Smith,* 32 S.W.3d 532, 555 (Mo. banc 2000).

20. Rule 30.25. See *State v. Glass,* 136 S.W.3d 496, 517 (Mo. banc 2004); *State v. Ferguson,* 20 S.W.3d 485, 500 (Mo. banc 2000).

21. *State v. Edwards* 116 S.W.3d 511, 537 (Mo. banc 2003).

22. *State v. Dowell,* 25 S.W.3d 594, 609 (Mo. App.2000); *State ex rel. Horn v. Randall,* 275 S.W.2d 758, 763 (Mo.App.1955); *Hardwick v. Kansas City Gas Co.,* 352 Mo. 986, 180 S.W.2d 670, 673 (1944).

23. *State v. Barton,* 936 S.W.2d 781, 783 (Mo. banc 1996).

24. *State v. Black,* 50 S.W.3d 778, 787 (Mo. banc 2001); *Barton,* 936 S.W.2d at 783.

25. *State v. Kinder,* 942 S.W.2d 313, 329 (Mo. banc 1996).

26. *Edwards* 116 S.W.3d at 537.

27. *Barton,* 936 S.W.2d at 784.

vant prejudicial matters, or otherwise tend to confuse the jury." [28]

■ Appellant's claim that sustaining the State's objection to his penalty phase argument somehow deprived the jury of evidence in mitigation is erroneous. The argument was not evidence. The argument was an attempt by Appellant to draw an inference from testimonial evidence that was properly admitted and before the jury to consider. While the trial court sustained the objection, the State did not request, and the court did not sua sponte deliver, a limiting instruction to the jury telling them that they could not consider Appellant's argument. Even assuming, arguendo, that the trial court abused its discretion when sustaining the objection, the jury, having the argument to consider and having not been deprived of the actual evidence from which the inference was drawn, was not prejudiced towards Appellant's case.

■ Appellant also contends that numerous statements made by the prosecutor during the guilt and penalty phase closing arguments constituted prosecutorial misconduct and prejudiced his case. In situations involving prosecutorial misconduct, the test is the fairness of the trial, not the culpability of the prosecutor.[29] "Where prosecutorial misconduct is alleged, the erroneous action must rise to the level of 'substantial prejudice' in order to justify reversal." [30] "The test for 'substantial prejudice' is whether the misconduct substantially swayed the judgment." [31]

The prosecutor's statements that Appellant claims constitute prejudicial misconduct are:

**Guilt Phase:**

(1) "Did he deliberate—did he deliberate after the first shot? He had time. Did he deliberate after the second shot? He had time again. After the third? He had adequate time then. He kept shooting, didn't he?"

(2) "Now, is the fact that you knowingly shoot somebody enough to be deliberation? In and of itself, no. But certainly if you pull the trigger twice, was there time to deliberate? You bet there was. And he shot Harriett Smith five or six times."

**Penalty Phase:**

(1) "I submit to you when you—when you get shot in the leg, and shot in the palm, and shot in the wrist, and shot in the torso, and then twice in the head, and again, there is no reason to keep shooting somebody if they're already dead."

(2) "Your second option is—the second thing is you must find that the statutory—that the aggravating circumstances, that is, all the facts in the case taken as a whole are not outweighed by the mitigating circumstances. And if you find unanimously that that is so, then you will have that final point of decision we talked about, with all options open."

(3) "Society, just like each one of us as an individual has the right to self-defense, even if that right of self-defense includes killing in order—against an unprovoked attack ... Society has the

28. *Barton*, 936 S.W.2d at 783.

29. *State v. Williams*, 922 S.W.2d 845, 851 (Mo.App.1996); *Smith v. Phillips*, 455 U.S. 209, 220, 102 S.Ct. 940, 71 L.Ed.2d 78, (1982).

30. *State v. Peterson*, 833 S.W.2d 395, 398 (Mo. App.1992).

31. *Id.*

right to defend itself . . . you are society. We look to you to defend us."

(4) "He says putting him in prison is enough, for life. You know, well, unfortunately, there are people in prison too: prisoners and staff and guards. It's not like he going to be inside a concrete box with no access to anybody so society is still at risk."

(5) "Remember the incidents described by Lt. Trudeau and Officer Ridenour high speed chases . . ."

(6) ". . . the defense made a rather eloquent plea for mercy, but I want you to understand what mercy is. Mercy is something that is given by the powerful to the weak and the innocent. You have power. He's not innocent."

(7) "I'm tempted to say and I think I will. How many people do you get to kill before you stop them cold? If not now, when? If not here, where?"

(8) "I was struck when I read some of what Edmond Burke had to say, English philosopher . . . All that is necessary for evil to triumph is for good men to do nothing. You could send him to prison. He knows all about prison. I suggest to you that that's tantamount to doing nothing."

(9) "Show me remorse in this case. Remember what Officer Belawski said? He said he simply asked how Joann was. Why? Because he knew that shooting a cop is one thing, killing a cop is something else altogether and he knew it."

■ The State, just like the defense, has wide latitude in drawing inferences from the record when presenting its closing argument.[32] A review of the record and trial transcripts confirms that the prosecutor's guilt phase arguments were appropriate inferences based upon the facts in the record. Similarly, of the penalty phase arguments listed above, statements 1, 5, and 9 are appropriate inferences based upon the factual record. Statement 2 references the law in terms of statutory aggravators and it too was made without error.

■ Statements 3 and 4, putting forth the argument of societal self-defense, has previously been upheld by this Court and the United States Supreme Court as being permissible and not violative of a defendant's rights to a fair trial.[33] Statements 6, 7, and 8 all interrelate with the concept of whether the jury should be merciful to Appellant. "Prosecutors may discuss the concept of mercy in their closing arguments because mercy is a valid sentencing consideration, and in that connection may argue that the defendant should not be granted mercy."[34] Appellant provides nothing other than speculation that exclusion of these statements would have changed the outcome of his trial. Appellant's point alleging prosecutorial misconduct is denied.

### V.

Appellant's points IV, V, XI, and XII raise claims of error with numerous jury instructions. Appellant contends that the written guilt phase instruction 4 and penalty phase instruction 19, as well as the oral instruction, defining reasonable doubt and patterned after MAI–Cr3d 300.02, were defective, thus, subjecting him to conviction and sentencing based upon a lower

**32.** *Black,* 50 S.W.3d at 787; *Barton,* 936 S.W.2d at 783.

**33.** *State v. Kreutzer,* 928 S.W.2d 854, 876 (Mo. banc 1996); *State v. Chambers,* 891 S.W.2d 93, 108 (Mo. banc 1994); *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

**34.** *State v. Deck,* 994 S.W.2d 527, 543 (Mo. banc 1999).

quantum of guilt. He also challenges penalty phase instructions 28–30, patterned after MAI–Cr3d 314.44; and penalty phase instructions 34–36, patterned after MAI–Cr3d 314.48, claiming these instructions failed to inform the jury that the State bore the burden of proving aggravating circumstances beyond a reasonable doubt. Finally, Appellant contends that guilt phase instruction 5, on voluntary intoxication patterned after MAI–CR3d 310.50, shifts the burden of proof to the defense. Appellant believes the wording of these instructions allowed the jury to infer that the burden of proof was not beyond a reasonable doubt. Appellant also claims that the State's information was defective for failing to plead the statutory aggravating circumstances it intended to submit at trial.

On claims of instructional error, "[a]n appellate court will reverse only if there is error in submitting an instruction and prejudice to the defendant." [35] MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions. [36]

This Court has previously rejected these and similar arguments concerning these MAI patterned instructions and the defective information allegation. The information was not defective, and these instructions in no way preclude the jury from giving proper effect to the overall burden of proof or the burden with proving aggra-

vating circumstances and properly weighing the mitigating evidence. [37] None of these instructions shifts the burden of proof to the defense. Having ruled on these issues previously, and having examined these claims thoroughly and finding no error of law, an extended opinion on these issues would have no precedential value. [38] The jury was instructed properly, and jurors are presumed to follow the court's instructions. [39]

## VI.

In Appellant's point VI, he claims the trial court plainly erred by failing to *sua sponte* admonish the prosecutor and declare a mistrial when the prosecutor objected to recognizing two of Appellant's witnesses as being experts. During penalty phase, Appellant offered the testimony of doctors Michael Gelbort, an expert in neuropsychology, and Lee Evans, an expert in psychiatric pharmacology. The State objected to certifying them as experts, but the trial court overruled the objections and certified them as experts for the testimony they offered. Appellant requests plain error review, acknowledging that he did not preserve his claim by objecting to the prosecutor's statements.

"Issues that were not preserved may be reviewed for plain error only, which requires a finding that manifest injustice or miscarriage of justice has re-

---

**35.** *Id.*

**36.** Rule 28.02(c); *State v. Whalen,* 49 S.W.3d 181, 188 (Mo. banc 2001).

**37.** See *Gill,* 167 S.W.3d at 195–197; *Glass,* 136 S.W.3d at 517, 520–21; *Taylor,* 134 S.W.3d at 30; *State v. Tisius,* 92 S.W.3d 751, 766–767, 770, (Mo. banc 2002); *Cole,* 71 S.W.3d at 171 and 176; *Ferguson,* 20 S.W.3d at 500; *State v. Johnson,* 22 S.W.3d 183, 192 (Mo. banc 2000); *Wolfe,* 13 S.W.3d at 264;

*State v. Armentrout,* 8 S.W.3d 99, 111–112 (Mo. banc 1999); *State v. Johnson,* 968 S.W.2d 686, 694 (Mo. banc 1998); *State v. Simmons,* 944 S.W.2d 165, 180 (Mo. banc 1997); *State v. Taylor,* 944 S.W.2d 925, 936 (Mo. banc 1997).

**38.** Rule 30.25.

**39.** *State v. Madison,* 997 S.W.2d 16, 21 (Mo. banc 1999).

sulted from the trial court error." [40] Appellant's claims that the prosecutor's objections amount to pronouncements of legal conclusions that prejudiced his case are purely speculative and not supported by the record. The doctors were certified as experts and the jurors were properly instructed that objections are not evidence. Jurors are presumed to follow the court's instructions. [41] The trial court did not err for not admonishing the prosecutor and for not declaring a mistrial.

## VII.

■ In point VII, Appellant claims trial court error with accepting the jury's penalty phase verdicts, arguing that the verdicts were inconsistent. Appellant contends that because the murders of Harriett Smith and Michael Wells were committed in close proximity to each other in terms of time and location, that for the jury to find that the murder of Smith was committed during the murder of Wells but fail to issue a reciprocal finding creates inconsistent verdicts that must be overturned. Appellant also challenges the sufficiency of the evidence supporting the verdict that Smith's murder was committed during Wells's murder. Because Appellant failed to preserve these claims at trial with an appropriate objection, this Court reviews for plain error.

■ Appellant's assertion that the jury was required to find identical statutory aggravators for the murders of Smith and Wells is erroneous. Wells was murdered first, and it was reasonable for the jury to find that Smith's murder was committed

during another unlawful homicide, but not visa versa because Wells was presumably dead at the time of Smith's murder. Moreover, even assuming arguendo that the verdicts were inconsistent, "[a]n inconsistent verdict ... does not require a reversal provided there is sufficient evidence to support the jury's finding of guilt." [42]

The gravamen of Appellant's sufficiency of the evidence argument is that because Wells was killed first, Smith could not have been killed during the commission of another unlawful homicide. Appellant provides no authority to support the proposition that multiple murders must be committed simultaneously, as opposed to being committed during the same criminal transaction, in order for sufficient evidence to exist to establish this statutory aggravator. This Court has already held to the contrary. [43] To succeed on a claim for plain error review "requires a finding that manifest injustice or miscarriage of justice has resulted from the trial court error." [44] The evidence was sufficient to support the jury's finding. There was no trial court error to warrant proceeding to the second prong of plain error review.

## VIII.

■ Appellant's point VII claims error with the trial court's striking two venirepersons for cause. Appellant contends that these individuals only indicated that they would have difficulty signing a death verdict, not that they were incapable of objectively considering giving a recommendation for the death penalty.

---

40. *State v. Strong*, 142 S.W.3d 702, 710 (Mo. banc 2004); Rule 30.20.

41. *Madison*, 997 S.W.2d at 21.

42. *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983).

43. *State v. Anderson*, 79 S.W.3d 420, 442 (Mo. banc 2002); *Deck*, 994 S.W.2d at 545.

44. *Strong*, 142 S.W.3d at 710; Rule 30.20.

■■■ "A juror may be stricken for cause if it appears that he or she cannot consider the entire range of punishment, apply the proper burden of proof, or otherwise follow the court's instructions in a first degree murder case." [45] "The qualifications of a prospective juror are not determined conclusively by a single response, but are made on the basis of the entire examination." [46] "The trial court is in the best position to evaluate a venireperson's commitment to follow the law and is vested with broad discretion in determining the qualifications of prospective jurors." [47] A trial court's "ruling on a challenge for cause will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion." [48]

During voir dire, the venirepersons in question indicated they would have extreme difficulty in voting for the death penalty. This was not a simple matter of these individuals being unable to sign a recommendation for death. A full review of the transcripts indicates that the trial court did not abuse its discretion when striking these potential jurors, because objectively they appeared to be unable to consider the full range of punishment.

## IX.

■■■ In point X, Appellant argues that the trial court erred when overruling his motion for acquittal and by failing to *sua sponte* declare a mistrial when the prosecutor argued that the facts supported a determination that he deliberated while committing the homicides. Appellant also claims that section 565.020, defining first-degree murder, is unconstitutionally vague for failing to adequately distinguish first from second-degree murder.

Contrary to Appellant's contentions, the prosecutor did not improperly define or argue the issue of deliberation. The record reveals that the State argued that the evidence of multiple victims, multiple wounds, and the timing between shots warranted a proper inference of deliberation. The prosecutor did not equate these facts with the definition of deliberation, thus making the determination for the jury as Appellant asserts.

Regarding Appellant's constitutional claim of vagueness that section 565.021 does not adequately distinguish first from second-degree murder, this Court has rejected this claim numerous times before.[49] Having examined this claim thoroughly and finding no error of law, an extended opinion on these issues would have no precedential value.[50]

## X.

■■■ This Court independently reviews the proportionality of all death sentences. Under section 565.035.3, RSMo 2000, this Court is required to determine whether:

(1) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) the sentence of death is excessive or disproportionate to the penalty im-

---

**45.** *Middleton,* 995 S.W.2d at 460.

**46.** *Id.*

**47.** *Id.*

**48.** *Id.*

**49.** *State v. Middleton,* 998 S.W.2d 520, 524 (Mo. banc 1999); *State v. Rousan,* 961 S.W.2d 831, 851–52 (Mo. banc 1998).

**50.** Rule 30.25.

posed in similar cases, considering both the crime, the strength of the evidence, and the defendant.

Having thoroughly reviewed the record, this Court concludes that there is no evidence to suggest that the punishment imposed was a product of passion, prejudice, or any other arbitrary factor.

The trial court's findings are next reviewed to determine if the evidence supports, beyond a reasonable doubt, the existence of an aggravating circumstance and any other circumstance found. In this case, the jury unanimously found three statutory aggravating circumstances as a basis for considering the death sentence. The evidence supports, beyond a reasonable doubt, a finding that the Appellant murdered Harriett Smith while committing another unlawful homicide and for the purpose of receiving something of monetary value. Appellant also murdered Michael Wells for pecuniary gain, and he murdered Joann Barnes while she was engaged in the performance of her official duty.[51]

Finally, this Court has upheld sentences of death in similar cases where the defendant committed multiple murders.[52] The death sentence in this case is neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant.

### XI.

The judgment is affirmed.

All concur.

---

51. Section 565.032.2.

52. *State v. Gilbert,* 103 S.W.3d 743 (Mo. banc 2003); *State v. Tisius,* 92 S.W.3d 751 (Mo. banc 2002); *State v. Anderson,* 79 S.W.3d 420 (Mo. banc 2002); *State v. Mayes,* 63 S.W.3d 615 (Mo. banc 2001).