STATE of Missouri, Respondent,

v.

Thurman SHELTON, Appellant.

No. ED 92084.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 22, 2009.

770

Ellen H. Flottman, Office of the Missouri Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, John W. Grantham, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Thurman Shelton (Defendant) appeals from the trial court's judgment, following a jury trial, convicting him of involuntary manslaughter, in violation of Section 565.024, RSMo (2000) [1], assault in the first degree, in violation of Section 565.050, and armed criminal action, in violation of Section 571.015. Defendant was sentenced to consecutive terms of imprisonment of seven years, thirty years, and thirty years, respectively. Finding no abuse of discretion in the trial court's admission of a hearsay statement, we affirm.

## Background

Because Defendant does not dispute the sufficiency of the evidence, we will review only those facts relevant to Defendant's claim on appeal. Viewing the evidence in the light most favorable to the verdict, the following evidence was adduced at trial.

Christina Luckett (Luckett) and April Penn (Penn) were friends who, between January and March 2006, were working on Luckett's home in East St. Louis, Illinois. At some point during that time frame, Luckett and Penn visited a casino in St. Charles, Missouri, where they met Defendant. During that meeting, Defendant and Luckett exchanged telephone numbers. Several days later Luckett and Penn met up with Defendant and his friend at Luckett's hotel room in downtown St. Louis, Missouri. Luckett and Penn stayed in the hotel for about a week, during which time Defendant would visit and occasionally spend the night with Luckett. After the first week, Luckett and Penn moved to a different hotel in St. Louis. Defendant went with them to the new hotel. At some point Defendant introduced Penn to a man named Michael. Penn was under the impression Michael's last name was "Wilson," though she later learned it was "Harris." Shortly thereafter, Penn and Harris started dating.

On March 14, 2006, the group—Luckett, Penn, Defendant, and Harris—traveled to Luckett's mother's home in Quincy, Illinois, where they spent the night. The next morning Defendant informed the group that he received a phone call from the mother of his child who wanted him to come visit his child. The group then decided to return to St. Louis. Luckett drove her car with Defendant in the passenger seat and Penn and Harris in the backseat—Penn behind Defendant and Harris behind Luckett. Upon returning to St. Louis, Defendant instructed Luckett to drive to an apartment complex. When they arrived at the apartments, Defendant directed Luckett to drive to the back of the complex and back into a parking space. After a discussion about meeting up later, Defendant exited the car and went to the trunk where he retrieved his belongings, including a backpack. Defendant then walked to Luckett's door, placed his backpack on the top of the car near the car's sunroof, opened the door and gave Luckett a kiss, and then closed Luckett's door. Penn testified that she then heard a gunshot and saw Luckett's head "flopping." Defendant testified that the shooting was an accident and that when he went to pick up his belongings, including the gun, from the top of the car, the gun accidentally fired. Immediately following the gunshot, Penn heard Harris state "I thought you were just bullshitting, I didn't really think you were going to do it." Harris then

1. All further statutory references are to RSMo (2000), unless otherwise indicated.

exited the car while Penn was screaming. Penn then heard another gunshot and felt a burning on the side of her head. Penn put her head on her lap and pretended to be dead. Defendant and Harris then removed Luckett from the car. They returned and grabbed Penn, carried her to a ditch behind the car, and threw her on top of Luckett. The men then left with the car.

The State of Missouri (State) charged Defendant by Indictment on April 19, 2006, with seven counts stemming from the March 15, 2006 incident. Counts I and II charged one count of murder in the first degree, in violation of Section 565.020, and one count of armed criminal action, in violation of Section 571.015, for the shooting death of Luckett. Counts III and IV charged one count of assault in the first degree, in violation of Section 565.050, and one count of armed criminal action for the shooting of Penn. Counts V and VI charged one count of robbery in the first degree, in violation of Section 569.020, and one count of armed criminal action for the armed robbery of Luckett's vehicle. Count VII charged one count of tampering with physical evidence, in violation of Section 575.100, for concealing the bodies of Luckett and Penn. The State later filed an Information in Lieu of Indictment charging all seven counts listed on the Indictment, however later entered an order of nolle prosequi as to Count VII.

Prior to the start of his trial, Defendant filed a motion in limine on September 8, 2008, seeking an order precluding the State from making reference to a variety of evidence including the statement by Harris to Defendant made shortly after the shooting of Luckett. Defendant believed the State would produce evidence of Harris's statement to Defendant that, "I thought you were just bullshitting; I didn't think you would really do it." Defendant argued that the statement should be excluded as hearsay.

Defendant was tried before a jury on September 9 through 13, 2008. During the trial, Defendant objected to Penn's testimony regarding Harris's statement on the grounds that said statement was hearsay and was an inadmissible statement of a co-conspirator. The State argued that Harris's statement fell under the excited utterance exception to the hearsay rule and was also admissible under the exception for statements made between co-conspirators. The trial court overruled Defendant's objection and allowed the statement into evidence on the basis of the excited utterance exception to the hearsay rule.

Defendant also objected to the admission of Harris's statement when it was presented to the jury through Detective Michelle Merriwether's (Detective Merriwether) testimony. Detective Merriwether testified that Penn told her during an interview that immediately after hearing the first gunshot, Harris stated, "I thought you were bullshitting. I didn't think you was really going to do it." Defendant objected on the basis that Detective Merriwether's testimony constituted hearsay, bolstering, and cumulative evidence. The trial court overruled Defendant's objection, allowing the State to ask only one witness to repeat the statement for the purpose of corroborating that the statement was not a recent fabrication of Penn's.

At the conclusion of the trial the jury found Defendant guilty of involuntary manslaughter, first degree assault, and armed criminal action. The jury found Defendant not guilty on the other counts. The jury recommended a sentence of seven years of imprisonment for the involuntary manslaughter conviction, and thirty years of imprisonment each for the remaining two convictions.

Defendant filed a motion for new trial on October 3, 2008, asserting, among a number of other claims, that the trial court erred in overruling Defendant's objection to Harris's statement offered through the testimony of Penn and Detective Merriwether. Defendant claimed that Penn's testimony was inadmissible hearsay and Detective Merriwether's testimony was improper bolstering. The trial court denied Defendant's motion for a new trial.

The trial court entered its Sentence and Judgment according the jury's verdicts and recommendations on October 17, 2008.

Defendant filed a Notice of Appeal on October 27, 2008. This appeal follows.

### Point on Appeal

Defendant asserts that the trial court abused its discretion when it overruled Defendant's objections to the testimony of Penn and Detective Merriwether regarding the statement made by Harris to Defendant, "I thought you were just bullshitting. I didn't really think you were going to do it." Defendant claims Penn's testimony was hearsay and did not fall into the co-conspirator or excited utterance exceptions to the hearsay rule, and also violated the Confrontation Clause of the Constitution. In a separate claim of trial error, Defendant asserts Detective Merriwether's testimony was double hearsay, which improperly bolstered Penn's testimony.[2]

### Standard of Review

 A trial court has broad discretion in admitting or excluding evidence at trial. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). Our standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court

has clearly abused its discretion. *Id.* An abuse of discretion occurs when "a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* Additionally, on direct appeal, we review the trial court, not just for mere error, but for prejudice, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 223–24. An error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial. *Id.* at 224.

### Discussion

 A hearsay statement is an out-of-court statement used to "prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007). Harris did not testify at Defendant's trial, but his statement about Defendant shooting Luckett was admitted through the testimony of Penn, and then Detective Merriwether. Harris's out-of-court statement was used to prove the truth of the matter asserted: that Defendant had previously spoken to Harris about shooting or killing Luckett. This statement was critical to the State's attempt to prove Defendant committed first-degree murder, and that the shooting was not accidental. Harris's statement is hearsay evidence. Accordingly we must now determine whether the hearsay statement was admissible under an exception to the general hearsay rule.

### I. Penn's Testimony

#### A. Excited Utterance

 In order to be admissible, Penn's testimony regarding Harris's statement must fall under an exception to the general

---

**2.** Defendant inappropriately combines two alleged errors of the trial court into one point on appeal in violation of Supreme Court Rule 84.04(d). Despite Defendant's failure to comply with Rule 84.04, we will consider *ex gratia* his claims for abuse of discretion.

rule against hearsay evidence. *See id.* The trial court admitted Harris's statement under the "excited utterance" hearsay exception. The "excited utterance" exception depends on a "startling or unusual occurrence sufficient to overcome normal reflection such that the ensuing declaration is a spontaneous reaction to the startling event." *Id.* The Missouri Supreme Court has stated:

> Courts have determined that excited utterances are inherently trustworthy because the startling nature of the event is speaking through the person instead of the person speaking about the event. Because the statement is spontaneous and made under the influence of events, the statement is assumed trustworthy because it is unadorned by thoughtful reflection. Among the factors to be considered in determining whether an excited utterance exists are [1] the time between the startling event and the declaration, [2] whether the declaration is in response to a question, [3] whether the declaration is self-serving, and [4] the declarant's physical and mental condition at the time of the declaration. While no one factor necessarily results in automatic exclusion, all should be considered in determining whether the declaration was the result of reflective thought.

*Id.*, *quoting Bynote v. Nat'l Super Markets, Inc.*, 891 S.W.2d 117, 122 (Mo. banc 1995).

The Court then went on to explain:

The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy. This exception is premised on the idea that where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant.

*Id.*, *quoting State v. Strong*, 142 S.W.3d 702, 718 (Mo. banc 2004).

The record before us clearly confirms that the trial court properly considered Penn's statement admissible as an excited utterance. First, Penn testified that *immediately* after Defendant shot Luckett, Harris exclaimed to Defendant, "I thought you were just bullshitting, I didn't really think you were going to do it." Reviewing the elements set forth by the Missouri Supreme Court in *Kemp* to determine whether the statement was an excited utterance, we first examine the time between the event and the declaration. Penn testified that mere seconds passed between Defendant's shooting of Luckett and Harris's statement. The immediacy of Harris's statement supports a finding that the statement was an excited utterance. Second, Harris's declaration was not in response to a question, but instead was an immediate and direct response to Defendant's sudden shooting of Luckett. Harris's reaction to the shooting is wholly consistent with the excited utterance exception. Third, the declaration was not self-serving. To the contrary, Harris's statement is adverse to his interest as the statement tends to show that Harris was aware that Defendant said he planned to shoot Luckett before Defendant actually committed the act. Finally, examining Harris's physical and mental condition at the time of the statement, there is sufficient evidence from which the trial court could reasonably conclude that Harris was clearly shocked and surprised at the time he made the statement. The evidence shows that Harris suddenly jumped out of the car after Defendant shot Luckett, and then made the statement. The circum-

stances surrounding the shooting strongly support a finding that Harris's statement was made "under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event." *See id.* The trial court did not abuse its discretion in admitting Penn's testimony as to the statement made by Harris as an "excited utterance" exception to the hearsay rule.[3]

### B. *Confrontation Clause*

 Having survived traditional hearsay analysis, Harris's out-of-court statement must now clear the second hurdle: the Confrontation Clause of the Sixth Amendment, which applies to all criminal prosecutions. *See id.* Defendant argues that the trial court's admission of Harris's statement violated his constitutional right to confront the witnesses against him. Although similar to the hearsay analysis, the Confrontation Clause analysis is a separate and distinct evidentiary determination. *See id.*

The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." It is the testimonial nature of a statement that makes a declarant a "witness" that the defendant has the right to confront. *Id.* at 51, 124 S.Ct. 1354.

 The threshold questioning analyzing a Confrontation Clause Claim is whether the out-of-court statement is testimonial. *Crawford* defines "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* The Court continues to state that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* Confrontation Clause protection does not extend to situations where governmental or law enforcement involvement does not exist. *In the Interest of N.D.C.,* 229 S.W.3d 602, 605 (Mo. banc 2007), *citing Kemp,* 212 S.W.3d 135. In those situations, the statement is non-testimonial and *Crawford* does not provide Sixth Amendment protection. *Id.*

The record supports a finding that Harris's statement to Defendant was not testimonial. Harris was not talking to any government official or police officer when he made the statement; he was talking only to Defendant. Because Harris's statement was not testimonial, *Crawford* and the Confrontation Clause analysis do not apply. Harris's statement was properly admitted through Penn's testimony as an excited utterance exception to the hearsay rule and did not violate the Confrontation Clause.

### II. *Detective Merriwether's Testimony*

 Defendant also claims that the trial court erred in admitting Detective Merriwether's testimony regarding Harris's statement to Defendant, and asserts said testimony was improper bolstering.

 "Improper bolstering occurs when an out-of-court statement of a witness is

---

**3.** Because we find Harris's statement admissible under the "excited utterance" exception to the hearsay rule, we need not address

Defendant's assertion that the statement did not fall under the "co-conspirator" exception.

offered solely to duplicate or corroborate trial testimony." *Forrest,* 183 S.W.3d at 224, *quoting State v. Wolfe,* 13 S.W.3d 248, 257 (Mo. banc 2000). However, improper bolstering does not occur when the out-of-court statement is offered for relevant purposes other than corroboration and duplication, such as when the statement is offered for rehabilitation. *Wolfe,* 13 S.W.3d at 257 (Mo. banc 2000).

When Detective Merriwether's testimony regarding Harris's statement drew the objection of Defendant, the State explained to the court that its purpose for introducing Detective Merriwether's testimony was not improper bolstering; rather, Merriwether's testimony was necessary to rehabilitate Penn's testimony following cross-examination, and to prove that Penn's statement was not a "recent fabrication." The State's use of Detective Merriwether's testimony was proper. We further note the trial court's precaution by restricting the State to only one witness to testify about Penn's recitation of Harris's statement, and thereby limiting the repetition of Harris's statement before the jury. This restriction precluded the presentation of cumulative evidence regarding Harris's statement.

The trial court did not err and did not abuse its discretion in when it allowed Penn and Detective Merriwether to testify about the statement made by Harris. Defendant's point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

KENNETH M. ROMINES, C.J., and GEORGE W. DRAPER III, J., Concur.