

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110950 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 2022-CR01763-01 |
| | ) | |
| DEXTER WIGGLEY, | ) | Honorable Rex M. Burlison |
| | ) | |
| Appellant. | ) | Filed: July 18, 2023 |

**Introduction**

A trial jury found Appellant Dexter Wiggley guilty of first-degree murder and armed criminal action, and he was sentenced to life in prison without the possibility of parole. On appeal, Wiggley argues the trial court erred in admitting into evidence a photograph bearing a police officer's handwritten notation because the notation constituted inadmissible hearsay. The trial court's judgment is affirmed.

**Background**

We review the evidence in the light most favorable to the verdict. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). The evidence presented at trial is as follows.

On the morning of October 12, 2020, Bryant White ("Victim") pulled into the parking lot of J & W Liquor on North Florissant Avenue, exited his car, and began interacting with people on the parking lot. Dexter Wiggley, who was parked in a blue GMC Terrain, and another man

walked onto the parking lot and argued with Victim. Wiggley eventually left the lot and returned to the GMC Terrain. Victim likewise returned to his car and drove away, and Wiggley followed him. The interaction between Wiggley and Victim was captured by the liquor store surveillance cameras.

Victim pulled over in the 2200 block of Sullivan Avenue, less than half a mile from the liquor store. Wiggley pulled the GMC Terrain around and parked diagonally in front of Victim's car. Wiggley and another man emerged from the GMC Terrain and began shooting at Victim. Victim exited his car and attempted to flee, but the other man followed him and continued to shoot. Victim died from gunshot wounds to his chest and abdomen. After the shooting, the other man quickly returned to the GMC Terrain, and he and Wiggley drove away. A Ring surveillance camera at a residence on Sullivan Avenue captured the shooting.

Police recovered 9mm and .40 caliber cartridge cases from the scene of the shooting. The liquor store and Ring surveillance video were also collected for analysis. Detective Katherine Rund testified that she was able to use the surveillance video to trace the blue GMC Terrain seen in both videos to Wiggley. The GMC Terrain was registered to Wiggley's wife, and an officer that frequently worked the area recognized it as Wiggley's vehicle.

Wiggley was arrested on October 14, 2020, in the same blue GMC Terrain. Another man was sitting in the vehicle at the time and was also arrested with Wiggley. From the other man, police recovered a .40 caliber pistol that matched the .40 caliber cartridge cases found at the scene.

Detective Rund and her partner interviewed Wiggley and showed him a still-photo from the liquor store surveillance video showing two men walking in front of Victim's car on the day of the murder. Wiggley acknowledged that he was one of the men in the photo, but stated it

2

could be him on any day or at any time, as he frequented that lot. Wiggley was asked to note his acknowledgment on the photo, to which he responded, "Well, why can't you write that?" Detective Rund's partner then wrote "any day on the lot don't know what day" with an arrow pointing to the man Wiggley identified as himself, and showed it to Wiggley to confirm it was accurate. Wiggley acknowledged it was correct, and Detective Rund's partner initialed the photo.

At trial, the photo was admitted into evidence as State's Exhibit 125 over defense counsel's hearsay objection. The jury found Wiggley guilty of first-degree murder and armed criminal action. The trial court sentenced Wiggley as a prior and persistent offender to life in prison without the possibility of parole for first-degree murder and 20 years for armed criminal action, to run concurrently. This appeal follows.

**Standard of Review**

The trial court has broad discretion in determining whether to admit or exclude evidence at trial. *Forrest,* 183 S.W.3d at 223. An abuse of discretion is found when the decision to admit or exclude evidence is clearly against the logic of the circumstances and is so unreasonable and arbitrary as to indicate a lack of careful consideration. *State v. Barriner,* 210 S.W.3d 285, 296 (Mo. App. W.D. 2006).

Upon finding an abuse of discretion, a reviewing court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative. *State v. Cole*, 483 S.W.3d 470, 474 (Mo. App. E.D. 2016). Prejudice is outcome-determinative when, considered with and balanced against all of the evidence properly admitted, "there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *Id*. (quoting *State v. Douglas,* 131 S.W.3d 818, 826 (Mo. App. W.D. 2004)).

**Discussion**

Wiggley's sole point on appeal is that the trial court abused its discretion in admitting the photo, Exhibit 125, because it contained a written declaration by a non-testifying officer that Wiggley identified himself as the person in the photo. Specifically, Wiggley argues the written declaration on the photo was inadmissible hearsay.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. *State v. Kemp,* 212 S.W.3d 135, 146 (Mo. banc 2007). Hearsay is generally inadmissible unless it falls within a recognized exception to the hearsay rule. *State v. Howard,* 913 S.W.2d 68, 70 (Mo. App. E.D. 1995).

The admission of a party opponent is not hearsay. *State v. Brown,* 833 S.W.2d 436, 438 (Mo. App. W.D. 1992). A statement may be admitted as an admission of a party opponent if the statement is material to the issues of the case, the statement is relevant to the case, and the statement is offered by the opposing party. *Id.* at 439. Moreover, "the admission of a criminal defendant is relevant and material if it tends to incriminate the defendant, to connect the defendant to a crime, or to manifest the defendant's consciousness of guilt." *State v. McFadden*, 369 S.W.3d 727, 753 (Mo. banc 2012) (*quoting State v. Simmons,* 233 S.W.3d 235, 237–38 (Mo. App. E.D. 2007)). The defendant need not expressly acknowledge his guilt for a statement to qualify as an admission, and statements by an accused from which an inference of guilt may be drawn are admissible. *State v. Francis,* 455 S.W.3d 56, 68 (Mo. App. E.D. 2014).

Statements of third parties which give context to a defendant's admission are commonly referred to as adoptive or tacit admissions. *Id.* at 69. "Under the adoptive admission rule, a statement of another person is admissible as evidence against a criminal defendant when the defendant assents to or adopts the statement made by the other person through the defendant's

words or conduct." *Id.* "Whether called an admission against interest, an admission of a party opponent, an adoptive admission or a tacit admission, evidence of a third party's statement to a defendant is admissible only to give context to the defendant's reply." *Id.* at 72.

Wiggley adopted the statement written by the non-testifying police officer as his own when he confirmed that the officer's notation on the photo was an accurate representation of Wiggley's statement. *See Francis,* 455 S.W.3d at 69 (explaining a defendant makes an adoptive admission when he assents to or adopts the statement of another person by either words or conduct). Detective Rund testified that Wiggley identified himself in Exhibit 125 and stated that "it could be him on any day." When Detective Rund asked Wiggley to note that on the photo, Wiggley responded, "Well, why can't you write that?" After Detective Rund's partner wrote Wiggley's statement on the photo, Wiggley confirmed it was accurate. Because the notation on Exhibit 125 was Wiggley's adoptive admission, it was not hearsay and the trial court did not abuse its discretion in admitting the exhibit.

Wiggley nevertheless argues that Exhibit 125 also was impermissible bolstering of Detective Rund's live testimony. He is incorrect.

"A claim of error on the basis of improperly admitted hearsay is not the same as a claim of error based upon improper bolstering." *Forrest*, 183 S.W.3d at 224 (concluding that, where trial objection was to hearsay but issue on appeal was broadened to include improper bolstering, court should apply only plain error standard to bolstering claim). Because Wiggley objected to Exhibit 125 on only hearsay grounds at trial, his claim on appeal of improper bolstering may be reviewed only for plain error. *See State v. Irby*, 254 S.W.3d 181, 188 (Mo. App. E.D. 2008) ("To preserve an alleged error, a party must make a timely and specific objection at trial. The

5

objection cannot be broadened by arguing a new theory on appeal." (internal citations omitted));
Rule 29.11(d).[1]

Generally, we do not review unpreserved claims of error. *State v. Brandolese*, 601
S.W.3d 519, 526 (Mo. banc 2020). Rule 30.20 is an exception to the extent that "plain errors
affecting substantial rights may be considered in the discretion of the court when the court finds
that manifest injustice or miscarriage of justice has resulted therefrom." *Id.* (quoting Rule 30.20).
The text of Rule 30.20 makes clear that plain error review is a discretionary, two-step process.
*See State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022). The first step is to determine whether
the claim of error facially establishes substantial grounds for believing that manifest injustice or
miscarriage of justice has resulted. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).
Plain errors are those that are evident, obvious, and clear. *Id.* In the absence of such a
determination, an appellate court should decline to review for plain error. *See Brandolese*, 601
S.W.3d at 526; *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999). If plain error is
found on the face of the claim, then the court may proceed in its discretion to the second step,
which is to determine whether the claimed error resulted in manifest injustice or miscarriage of
justice. *See Baumruk*, 280 S.W.3d at 607; *Scurlock*, 998 S.W.2d at 586. "Under Missouri law,
plain error can serve as the basis for granting a new trial on direct appeal only if the error was
outcome determinative." *State v. Register*, 487 S.W.3d 15, 17 (Mo. App. W.D. 2016) (internal
quotation omitted).

"Improper bolstering occurs when an out-of-court statement of a witness is offered solely
to duplicate or corroborate trial testimony." *Forrest*, 183 S.W.3d at 224. "However, if the out-of-

---

[1] All Rule references are to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

court statement is offered for relevant purposes other than corroboration and duplication . . . there is no improper bolstering." *Id.*

In support of his bolstering argument, Wiggley cites only *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987). In *Seever*, the Supreme Court of Missouri held that the admission of a child victim's videotaped statement to highly contested facts, followed by the child's duplicative live testimony to the same facts, was improper bolstering. *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987). *Seever* has been limited to prohibit video evidence used to "wholly duplicate" live testimony of a child witness, which essentially allows the witness to testify twice. *State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995), *abrogated on other grounds by State v. Porter*, 439 S.W.3d 208, 211-12 (Mo. banc 2014); *Farr v. State*, 408 S.W.3d 320, 322 (Mo. App. E.D. 2013); *State v. Gollaher,* 905 S.W.2d 542, 545 (Mo. App. E.D. 1995).

Here, as already explained, the State properly adduced Exhibit 125 for Wiggley's adoptive admission identifying himself at the scene in the photo. Exhibit 125 also was admitted during Detective Rund's testimony to illustrate that she placed Wiggley at the scene based on the GMC Terrain he was driving and his clothing displayed in both the liquor store surveillance video and the Ring surveillance video from Sullivan Avenue. Detective Rund explained that she thus identified Wiggley and entered him as wanted for the murder, which ultimately led to his arrest. Wiggley has not demonstrated any evident, obvious, and clear error from the admission of Exhibit 125, and we decline to review for plain error. *See Brandolese*, 601 S.W.3d at 526.

At any rate, Wiggley fails to demonstrate that the admission of Exhibit 125 was so prejudicial as to be outcome-determinative under either the abuse of discretion standard applicable to his hearsay issue or plain error review, were we to engage in plain error review. *See Forrest*, 183 S.W.2d at 228; *see also Cole*, 483 S.W.3d at 475-76. Not only did Wiggley identify

himself in Exhibit 125, but the liquor store surveillance video, from which Exhibit 125 originated, and the Ring surveillance video also were admitted into evidence and published to the jury. Furthermore, the GMC Terrain captured in both surveillance videos was identified as Wiggley's vehicle by an officer who frequently worked the area, was registered to Wiggley's wife, and was the same vehicle in which Wiggley ultimately was arrested. Finally, the .40 caliber pistol recovered upon the arrests of Wiggley and the other man in the GMC Terrain matched the cartridge cases found at the scene. Suffice it to say Wiggley's suggestion that the evidence identifying him was sparse is belied by the record. *See Forrest*, 183 S.W.2d at 224; *Register*, 487 S.W.3d at 17. There was no prejudicial error from the admission of Exhibit 125 under either an abuse of discretion standard or plain error review.

Point denied.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.

8