

# In the Missouri Court of Appeals
# Eastern District

### DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED98277 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Robert H. Dierker |
| GEORGE TURNER, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 28, 2014 |

### Introduction

The appellant, George Turner ("Turner"), appeals from the judgment entered upon a jury verdict convicting him of burglary in the first degree in violation of Section 569.160,[1] arson in the first degree in violation of Section 569.040, and armed criminal action in violation of Section 571.015. On appeal, Turner challenges his convictions on the ground that the trial court erred in the admission of hearsay testimony. Because the hearsay testimony challenged by Turner met the requirements of an excited utterance, such testimony was admissible as an exception to the general exclusion of hearsay evidence. Accordingly, the trial court did not err in allowing the testimony, and we affirm.

---

[1] All statutory references are to RSMo. 2000.

<u>Factual and Procedural History</u>

Viewed in the light most favorable to the verdict, the facts adduced at trial are as follows. In the early morning hours of March 2, 2010, a residential fire occurred at the home of Celestine Stitts ("Stitts"). Stitts's neighbor, Debra Collins ("Collins") was awakened by the sound of Stitts knocking on her window around 3:00 a.m. Stitts was crying and screaming, bleeding from her head, and wearing only her underpants. Stitts told Collins that Turner, an acquaintance of hers, beat her up, set her on fire, and stole from her. Collins gave Stitts a sheet to cover herself and then called the police.

Officer Stacey Smith ("Officer Smith") arrived at the scene and attempted to interview Stitts about the fire and her injuries. When he found her, Stitts was lying on the sidewalk and bleeding from an injury to the back of her head. Stitts told Officer Smith that Turner came to her home earlier that night and asked her "Whatcha got for me? Whatcha got?" When she responded "I don't have anything," Stitts told Officer Smith that Turner began assaulting her, punching her in the face, and then poured gasoline on her and set her on fire. While Officer Smith was interviewing Stitts, Stitts was not crying or hysterical, but because of her physical condition Officer Smith believed she was near death. Stitts was then taken to the hospital where she was treated for severe burns to her skin and vocal chords as well as an injury to the back of her head.

A fire investigator for the St. Louis Fire Department was called to the scene to determine the cause and origin of the fire. The investigator found a red plastic container that smelled of gasoline near the origin of the fire. Based upon his investigation, the fire investigator determined that the fire had been intentionally set.

Turner was found several hours later in an abandoned building about a block away from Stitts's home. Police officers attempted to question Turner, but he was unable to speak because

2

of an injury to his tongue. Upon searching the abandoned building, police found a substantial amount of women's jewelry, a cell phone, a set of keys, a broken wristwatch, and two lighters.

Turner was subsequently charged with assault in the first degree, two counts of armed criminal action, burglary in the first degree, and arson in the first degree. The matter was tried before a jury on February 21, 2012 through February 24, 2012. At trial, Stitts testified that she had known Turner for approximately ten years. Turner had done yard work and other handyman work for Stitts's mother before she passed away, and then continued to occasionally work for Stitts doing odd jobs. As to the fire, Stitts testified that the last thing she could remember before waking up in the hospital was getting in a physical fight with Turner at her house. Stitts stated that Turner had come to her house and asked for work, and when Stitts told Turner that she had no work for him to do, Turner hit her and they started fighting.

Turner testified on his own behalf at trial. According to Turner, he arrived at Stitts's house around 10:00 a.m. on March 1, 2012, and spent the entire day there eating, drinking alcohol, and smoking crack cocaine. Turner stated that around 9:00 p.m. that evening, Stitts asked Turner to go buy some more crack cocaine, and when he returned without any drugs, Stitts assaulted him. Turner further testified that Stitts tried to throw gasoline on him and then threw a "big yellow flare" on him. Turner also stated that he hid in the abandoned building because he believed Stitts was following him.

Turner was found guilty of arson, one count of armed criminal action, and burglary. He was subsequently sentenced to six years' imprisonment for burglary, fourteen years' imprisonment for arson, and seven years' imprisonment for armed criminal action, with all sentences to be served concurrently. This appeal follows.

In his sole point on appeal, Turner asserts that the trial court erred in overruling his hearsay objections and admitting into evidence the out-of-court statements made by Stitts to both Debra Collins and Officer Smith explaining the cause of the fire and her injuries.

## Standard of Review

The standard of review for the admission of evidence is abuse of discretion. State v. Freeman, 269 S.W.3d 422, 426 (Mo. banc 2008). "This standard gives the trial court broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it 'is clearly against the logic of the circumstances.'" Id. at 426–27 (citing State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006)). We will not reverse for an evidentiary error unless prejudice is demonstrated. Forrest, 183 S.W.3d at 223–24. Trial court error is prejudicial when there is a reasonable probability that the error affected the outcome of the trial. State v. Reed, 282 S.W.3d 835, 838 (Mo. banc 2009).

## Discussion

Turner contends that the trial court erred in admitting Stitts's out-of-court statements because her statements did not fall under the excited utterance exception to the rule against hearsay evidence.[2] Turner does not dispute that the statements were made following a startling or unusual occurrence, but claims that the statements lack the requisite indicia of trustworthiness necessary to fall within the excited utterance exception to the hearsay rule.

"A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." Forrest, 183 at 224. Although Stitts testified at trial, she did not remember speaking to either Collins or Officer

---

[2] Turner also argues that the statements do not meet the requirements of the dying declaration exception to the hearsay rule. We need not consider this argument because our analysis of the excited utterance exception is dispositive of Turner's sole point on appeal.

Smith immediately after the fire. Therefore, the statements Stitts made to Collins and Officer Smith were introduced into evidence through the testimony of Collins and Officer Smith. It is not disputed that these statements were used by the State to prove the truth of the matter asserted – that Turner started the fire and assaulted Stitts. Accordingly, these statements are unquestionably hearsay. Thus, in order to be admissible, Stitts's out-of-court statements must fall under an exception to the general rule against hearsay evidence.

At trial, the State reasoned that Stitts's statements were excited utterances, and therefore admissible as an exception to the hearsay rule. The excited utterance exception applies to statements made following "a startling or unusual occurrence sufficient to overcome normal reflection such that the ensuing declaration is a spontaneous reaction to the startling event." State v. Kemp, 212 S.W.3d 135, 146 (Mo. banc 2007) (internal quotations omitted). The essential test for admissibility of an excited utterance is whether the statement was made under such circumstances as to indicate the statement is trustworthy. Id. Factors considered in determining whether an excited utterance exists include: "[1] the time between the startling event and the declaration, [2] whether the declaration is in response to a question, [3] whether the declaration is self-serving, and [4] the declarant's physical and mental condition at the time of the declaration." Id. No one factor necessitates exclusion, and "all should be considered in determining whether the declaration was the result of reflective thought." Id.

**Stitts's Out-of-Court Statements to Collins**

At the time Stitts told Collins that Turner beat her up, set her on fire, and stole from her, Stitts had just escaped her burning home. Stitts was not wearing any clothes except her underpants, had burns all over her body, and was bleeding from the head. Collins described Stitts as hysterical and "crying and screaming and everything." Based upon the evidence of Stitts's physical state and behavior, the record supports a finding that Stitts was under the

5

"immediate and uncontrolled domination of the senses" as a result of the shock of what she had just experienced. See State v. Strong, 142 S.W.3d 702, 718 (Mo. banc 2004) (internal quotations omitted).

Turner admits that, on the surface, the excited utterance exception "is at least suggested" by the foregoing facts. However, Turner maintains that Stitts's statements are not sufficiently trustworthy because of evidence that Stitts was under the influence of alcohol at the time she made the statements. In support of his argument, Turner relies on the testimony of Dr. Roseanne Naunheim, the attending E.R. physician who supervised Stitts's treatment. Dr. Naunheim testified that when Stitts came to the hospital on March 2, 2012, at 3:55 a.m., she had a blood alcohol content ("BAC") of "2.18." Dr. Naunheim then explained:

> Blood alcohol depends on how much you drink on a regular basis. If your blood alcohol is 2.18 and you drink daily, that means you might have slurred speech. If you don't drink at all and you went out for your twenty-first birthday and your blood alcohol was 2.18, you could be in near coma.

Based upon this limited testimony regarding Stitts's alcohol level, we are not persuaded that Stitts's out-of-court statements lacked the requisite indicia of trustworthiness to qualify as an excited utterance. First, the testimony regarding Stitts's BAC was brief and failed to explain Stitts's level of impairment at the time she spoke with Collins and Officer Smith. Moreover, Turner has failed to show how Stitts's level of impairment would establish that her statements were the result of reflective thought rather than a spontaneous reaction to a startling event. See Kemp, 212 S.W.3d at 146.

Turner has cited no judicial authority mandating the rejection of an excited utterance due to the declarant's blood alcohol level. As noted by the Supreme Court, "courts have determined that excited utterances are inherently trustworthy because the startling nature of the event is 'speaking through the person instead of the person speaking about the event.'" Id. (quoting

6

Bynote v. Natural Supermarkets, Inc., 891 S.W.2d 117, 122 (Mo. banc 1995)). Here, both the circumstances under which the statements were made and the nature of the statements themselves support a finding that the statements were made "under the uncontrollable domination of the senses and during the time when consideration of self-interest could not have been brought to bear through reflection or premeditation." State v Jones, 197 S.W.3d 227, 233 (Mo. App. W.D. 2006) (internal quotations omitted). The trial court did not abuse its discretion in admitting Collins's testimony of Stitts's out-of-court statements.

**Stitts's Out-of-Court Statements to Officer Smith**

Stitts spoke with Officer Smith shortly after speaking with Collins. Officer Smith testified that he found Stitts lying on the sidewalk in severe pain. While Stitts appeared to be going in and out of consciousness, Officer Smith testified she was not hysterical, yelling, or crying. Officer Smith explained that Stitts appeared to be close to death, "so she pretty much just said [what happened] somewhat in a calm matter." Stitts told Officer Smith that Turner assaulted her, punched her in the face, poured gasoline on her, and then set her on fire.

Under these circumstances, we are not persuaded that at the time she spoke with Officer Smith, Stitts was still under the "immediate and uncontrolled domination of the senses" as she was when she spoke to Collins. Stitts was no longer hysterical or agitated, negating one of the factors indicative of an excited utterance. However, even if Stitts's statements to Officer Smith were not admissible under the excited utterance exception to the hearsay rule, we will not reverse the trial court's judgment unless we find that Turner was prejudiced by the admission of Officer Smith's testimony. Here, Stitts's statements to Officer Smith were consistent with and substantially the same as her prior statements to Collins, which were properly admitted by the trial court. Because Officer Smith's testimony regarding the cause of the fire and Stitts's injuries was substantially similar to Collins's admissible testimony, we hold that there is no reasonable

probability that the admission of Officer Smith's cumulative testimony affected the outcome of Turner's trial. See State v. Evans, 992 S.W.2d 275, 292 (Mo. App. S.D. 1999) (finding questionable hearsay testimony did not prejudice defendant where similar evidence was properly admitted into evidence).

## Conclusion

Because evidence of Stitts's out-of-court statements presented through the testimony of Collins was properly admitted under the excited utterance exception to the hearsay rule, any error in allowing Officer Smith to testify to substantially the same evidence was not prejudicial. Accordingly, we affirm the judgment of the trial court.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

8