

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED101523 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| YOLONDA WASHINGTON, | ) | Honorable Steven R. Ohmer |
| | ) | |
| Defendant/Appellant. | ) | Filed: June 16, 2015 |

## Introduction

Yolonda Washington (Appellant) appeals from the judgment entered by the trial court upon the jury verdicts finding her guilty of second-degree assault and armed criminal action. We affirm.

## Factual and Procedural Background

On February 26, 2011, Appellant purchased a Dodge Intrepid from Eric Royston (Royston), the owner of Rebel Motors, a shop in the business of buying, repairing, and selling wrecked vehicles. Appellant made her first two payments on the car and then ceased making payments. Royston attempted to contact Appellant but was unsuccessful.

On October 28, 2011, Royston encountered Appellant driving the Intrepid when she pulled into a gas station as Royston was about to leave. Royston approached Appellant. Royston told Appellant he needed to take the Intrepid because she had stopped making

payments. Appellant prepared to drive off in the Intrepid while Royston stood in its open doorway. Appellant proceeded to drive the car, dragging Royston with it. Royston held onto the car because he was afraid if he let go, his feet would go under the car, causing the car to run over his legs.

Appellant turned right onto the street and Royston rolled off the side of the car into the street. Appellant then made a U-turn and drove straight back toward Royston, striking him. Royston was propelled onto the car, his shoulder going through the windshield, and then was thrown into the street. Appellant kept driving, but was blocked by another motorist to prevent her from leaving the scene. Royston was taken to the emergency room. He suffered a broken nose, a broken orbital bone, an arm broken in two places, a dislocated and shattered shoulder, permanent indentations on his shins, and various scrapes and bruises.

Appellant was charged with second-degree assault and armed criminal action. After a jury trial, the jury found Appellant guilty of both charges, and she was sentenced to three years in the Missouri Department of Corrections and one year in the Medium Security Institution. This appeal follows. Other evidence adduced at trial will be discussed as necessary in addressing the points raised on appeal.

### Points on Appeal

In her first point, Appellant contends the trial court abused its discretion in allowing the State to elicit testimony from Royston that he loaned Appellant a vehicle before the car Appellant sought to purchase was available because this evidence was irrelevant and prejudicial.

In her second point, Appellant maintains the trial court abused its discretion in allowing the State to introduce in rebuttal a statement she gave the police for the purpose of demonstrating

she did not mention she turned her car around to retrieve her purse because the statement was prejudicial and lacked foundation.

In her third point, Appellant claims the trial court abused its discretion in allowing the State to reference shooting a gun and beating a child in closing argument because these references were highly prejudicial and intended to inflame the jury.

## Standard of Review

The standard of review for the admission of evidence is abuse of discretion. State v. Turner, 420 S.W.3d 666, 669 (Mo.App. E.D. 2014). This standard gives the trial court broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances. Id. We will not reverse for an evidentiary error unless prejudice is demonstrated. Id. Trial court error is prejudicial when there is a reasonable probability the error affected the outcome of the trial. Id.

## Discussion

### Point I – Evidence of Royston Loaning Vehicle to Appellant

At trial, during direct examination by the State, Royston testified to the following while describing his relationship with Appellant:

> Q. (By the State) Okay. So you spoke with [Appellant] about a car. Was there a particular car that she wanted to buy?
> A. Yes. It was a Dodge Intrepid.
> Q. Okay. Was she able to take custody of that car right away?
> A. No.
> [DEFENSE COUNSEL]: Your Honor, may we approach?
> (Counsel approached the bench and the following proceedings were held.)
> DEFENSE COUNSEL: Your Honor, I believe he's going to testify that he lent her another car while she - while working on the Dodge Intrepid she eventually got. That is not relevant and I think that is really just - I think it can be prejudicial to show he's a nice guy. It is not relevant to the fact that she bought the Dodge Intrepid, that he lent her another car for a month while they were working on the car. That is what he is going to testify to.
> THE STATE: It is the knowledge of her identity and everything else.

3

DEFENSE COUNSEL:  I think we've established that.
THE COURT:  Well, I think there is some context here.  Overruled.
DEFENSE COUNSEL:  Of the car?
THE COURT:  Well, the relationship - the establishment of the relationship.  Overruled.
…
Q.  (By the State) I believe my question was, was she able to take custody of that car at that particular time?
A.  No.  It wasn't ready yet.
Q.  When you say it wasn't ready, what was wrong with the car?
A.  Well, it needed some paint and it needed - the passenger side door needed to be completed, repaired of, and we needed another couple weeks, so I lent her my car –

Q.  Okay.
A.  - so she could drive her and her mom.
Q.  Is that like a dealer car so-to-speak?
A.  Well, yeah.  It was my daily driver.  I mean, I'm the licensed owner in the business, so it's my car.

At trial, Royston identified Appellant as the woman to whom he sold the Intrepid and who assaulted him with it when he confronted her about nonpayment.  The fact that Royston also lent Appellant his own personal dealer car to use while his shop was finishing work on her Intrepid is relevant to his knowledge of her identity, which must be established at trial.  "The evidence at trial must show defendant was the person who committed the crime."  State v. Baker, 23 S.W.3d 702, 708 (Mo.App. E.D. 2000).  Evidence is relevant if it tends to prove a fact or issue or corroborate other relevant evidence which bears on a principal issue in the case.  State v. Shurn, 866 S.W.2d 447, 457 (Mo.banc 1993).  The trial court did not abuse its discretion in allowing this testimony because it was relevant to establish identity.

Further, Appellant later testified she did not recognize Royston when he approached her at the gas station and said she had never seen him before.  Royston's testimony regarding his prior dealings with Appellant, including lending her his dealer car, tended to cast doubt on her testimony that she did not know who Royston was, as did the police report wherein Appellant stated she knew who Royston was when he approached her at the gas station.

4

Despite the relevance of the evidence, Appellant maintains it was prejudicial because it tended to portray Royston as a nice person. Even giving Appellant's argument the benefit of the doubt that this testimony portrayed Royston as a nice person, it could not reach the level of prejudice necessary to affect the outcome of the trial because whether Royston was a nice person has no bearing on whether Appellant intentionally hit him with her car.

It is for the trial court to decide whether evidence is relevant and whether its probative value outweighs the prejudicial effect, and this decision will not be disturbed on appeal unless it is a clear abuse of discretion. State v. Davis, 318 S.W.3d 618, 640 (Mo.banc 2010). Whether or not Royston was a nice guy loaning Appellant his alleged personal dealer car for a few weeks prior to delivery of the Intrepid to her is unlikely to be a determining factor to the jury in whether Appellant committed assault against Royston. For the foregoing reasons, the trial court did not abuse its discretion in overruling Appellant's objection. Point I is denied.

## Point II – Rebuttal Evidence of Appellant's Testimony

On direct examination, Appellant explained that her actions in making a U-turn, driving back toward Royston and hitting him with the Intrepid were for the purpose of retrieving her purse, which had fallen out of the car and into the street.

> Q. And where - at this point where is the purse at?
> A. It's in the center lane, a median.
> Q. Where is Mr. Royston at?
> A. He's in the lane next to it, which would be to the left.
> Q. Okay. What is he doing?
> A. He's just laying there at that point in time.
> Q. Okay.
> A. But when I bust a U, I'm thinking, well, the car is faster than him and I can get to the purse before he can even regain footing or whatever the situation was…. So I bust a U-turn. My main goal is to get that purse. I'm driving down Hall Street southbound to go back and get the purse and I'd say - I get close to the purse. I can't say feet or whatever, but I'm close to getting this purse. But before I could stop on the brakes, he had - before I could stop on the brakes to get the purse, he had hopped out in front of the car.
> …

5

Q. Were you intending to hit him?
A. No, sir. I don't have a cold bone in my body to hit anybody.

On cross-examination, the following exchange occurred:

Q. And you didn't tell the police that you were aware [Royston] was one of the owners of the car lot when you purchased the car?

A. No, sir.
…

In rebuttal to Appellant's claims she did not know Royston or why he was demanding possession of her car and the reason she U-turned was to retrieve her purse, the State called Officer Banks.

Q. All right. Did you have occasion to speak with [Appellant] to talk about this case?
…
A. She said she was aware of Mr. Royston. He was one of the owners of the business that sold her the vehicle.
Q. Did she indicate knowing why he may have approached her?
A. Yes. She told me that she was late on her 2 car payments and Mr. Royston was actually looking for the vehicle and her - to ask her a couple of questions saying he was going to get the vehicle from her.
Q. And at any point in time, did she mention him having her purse or going after her purse?
A. No.
…
Q. What was her statement to you?
A. She stated that Mr. Royston approached her, like I said, about late payments on her vehicle. Mr. Royston said he was looking for the vehicle since July of 2011. The incident happened in October. So there became a verbal argument at the pumps at Christy's gas station on Hall Street. At this time, words was [sic] exchanged. She got into her vehicle. That's when Mr. Royston said, 'I'm taking this vehicle,' and was in between the doorway and the driver's seat. At this time, [Appellant], she drove off with Mr. Royston still attached to the vehicle.
Q. Okay. And I'm going to approach with a copy of your police report. I want to ask you a question about that. Do you remember quoting her from your police report?
…
A. She told Mr. Royston that I know I missed several payments, but I was going to pay you.
…
Q. And then the next paragraph, is that what she told you, that she knew he was the owner of the car?
A. Yes.

6

At trial, Appellant maintained she did not know who Royston was; she turned her car around to retrieve her purse; and Royston jumped in front of her car. These positions clearly were taken by Appellant to portray herself not only as innocent of the assault charge against her, but moreover as a victim of a strange man physically confronting her, trying to steal her car and then her purse, and actually jumping on top of her car. Therefore, it was permissible for the State to counteract Appellant's version of the events. Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence. State v. Gillespie, 401 S.W.3d 560, 563 (Mo.App. E.D. 2013). "If the defendant raises an issue directly or by implication, the prosecutor can present otherwise inadmissible testimony to counteract the negative inference the defense has injected into the case." Id.

Based on the foregoing, it was not an abuse of the trial court's discretion to allow the State to present Officer Banks's testimony that Appellant had told the police officer at the scene and at the station afterward that she did in fact know who Royston was and she knew why he wanted to repossess the Intrepid from her at the gas station, *i.e.,* because he had sold her the car and she had missed two payments on it. She also never mentioned a purse in any capacity to Officer Banks. This testimony and Officer Banks's refreshment of his recollection of Appellant's official statement to him the day of the incident by looking at the police report were proper, relevant and admissible to counteract and rebut Appellant's version of events to which she testified at trial. Gillespie, 401 S.W.3d at 563. Accordingly, Point II is denied.

### Point III – State's Closing Argument

Appellant takes issue with the State's closing argument.

THE STATE: Did they say why she did this? I don't think anybody would understand why someone would hit someone with a car, but we do know she attempted to do so. … *Why does somebody shoot somebody? Why does somebody beat on their child?*

(Emphasis added.)

A trial court has broad discretion to permit or prohibit statements during closing argument, and this Court does not reverse the trial court's ruling unless the trial court abuses this discretion and prejudices the defendant. State v. Brown, 337 S.W.3d 12, 19 (Mo.banc 2011). In order for the statements to have prejudiced Appellant, there must be a reasonable probability that the verdict would have been different had the statements been prohibited. Id. We find there is no reasonable probability the statements affected the jury's verdict, especially in light of the great weight of evidence demonstrating Appellant's guilt. Several eyewitnesses testified they observed Appellant drive away from the gas station dragging Royston, propelling him into the street before turning around and striking him with her car. Given this evidence, we conclude Appellant was not prejudiced by the court's allowance of the statements. Accordingly, the trial court did not abuse its discretion in permitting the State to proceed. Point III is denied.

<u>Conclusion</u>

The trial court's judgment is affirmed.

_Sherri B. Sullivan_
_____
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.

8